**Charles E. TINSLEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9842.**

District of Columbia Court of Appeals.

Argued Oct. 13, 1976.

Decided Dec. 17, 1976.

Charles F. Barker, Washington, D. C., appointed by this court, for appellant.

Frederick A. Douglas, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and Joseph B. Valder, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. John A. Terry, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.

Before GALLAGHER, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal from a conviction of two counts of voluntary manslaughter after indictment on two counts of second-degree murder, D.C.Code 1973, § 22–2403. It raises the issue of the propriety of joinder of the offenses for trial and the denial of

a timely motion for severance. The government took the position that the identity of the perpetrator could probably be proved by certain common factors in the two crimes. We hold the joint trial to have been erroneous because the asserted factors of commonality still left the question of identity to speculation and the probative value of the factors did not outweigh the prejudice they created.[1]

Joinder of offenses in certain cases is provided for by Super.Ct.Cr.R. 8(a) and D.C.Code 1973, § 23–311(a), which read identically.[2] A defendant, however, may seek relief from a prejudicial joinder under Super.Ct.Cr.R. 14 and D.C.Code 1973, § 23–313, which also read identically.[3] In the instant case, the offenses were tried together over the timely protest of appellant before trial and, therefore, the question is whether the trial record reveals a sufficient possibility of undue prejudice by reason of such joinder as to require reversal. We believe it does.

■ The appropriateness of joinder in evidence-of-other-crimes cases must be determined by balancing inevitable prejudice to the defendant caused by the joinder against the legitimate probative force of the evidence and expedition in judicial administration. *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). In cases not involving reciprocal admissibility of evidence, joinder may be permitted if the offenses involved are fairly separable by simple and distinct proof. *Langford v. United States*, 106 U.S.App.D.C. 21, 268

F.2d 896 (1959); *Dunaway v. United States*, 92 U.S.App.D.C. 299, 205 F.2d 23 (1953); *United States v. Lotsch*, 102 F.2d 35 (2d Cir.), *cert. denied*, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939). In such cases the prosecutor is able to present the evidence in such a manner that the accused is not confounded in his defense and the jury is able to treat the evidence relevant to each charge separately and distinctly.

As pointed out in *Drew v. United States, supra*, a defendant may be prejudiced by joinder for a variety of reasons:

(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. . . . [*Id.* at 14, 331 F.2d at 88.]

We must focus on the last two considerations because no contention is made as to the first.

■ Generally, undue prejudice will be presumed from evidence of other crimes unless that evidence can be admitted for some substantial and legitimate purpose such as those set out in *Drew v. United States, supra*.

---

1. Appellant also claims that the evidence of identification was insufficient and that he was denied effective assistance of counsel at trial. We need not reach these issues in view of our rationale for decision.

2. Super.Ct.Cr.R. 8(a), and D.C.Code 1973, § 23–311(a) provide:

   Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or

transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

3. Super.Ct.Cr.R. 14, and D.C.Code 1973, § 23–313, provide:

   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires. . . .

Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. . . . [*Id.* at 16, 331 F.2d at 90; footnote omitted.]

When evidence is relevant and important to one of these issues, its probative value is deemed to overshadow an otherwise impermissible prejudicial effect and, thus, the evidence of each crime is admissible at a separate trial of the other offense. Therefore, a joint trial of the offenses would not create the possibility of undue prejudice in such a case and would result in a saving of judicial resources.

As we view its brief, the government argues that joinder for trial here was appropriate because the offenses were sufficiently similar so as to corroborate the identity of the perpetrator.[4] Thus, it is argued, the evidence of each of the offenses would have been admissible in a separate trial of the other and the possibility of criminal propensity prejudice was in no way enhanced by the joinder. *Drew v. United States, supra*, states the test for admissibility in separate trials under the identity exception.

[I]f the facts surrounding the two or more crimes on trial show that there is a reasonable probability that the same person committed both crimes due to the concurrence of *unusual* and *distinctive* facts relating to the manner in which the crimes were committed, the evidence of one would be admissible in the trial of the other to prove identity. In such cases the prejudice that might result from the jury's hearing the evidence of the

other crime in a joint trial would be no different from that possible in separate trials. [*Id.* at 16, 331 F.2d at 90; emphasis supplied; footnotes omitted.]

We find lacking here the concurrence of unusual and distinctive facts sufficient to conclude that a reasonable probability exists that the same person committed both offenses.

A detailed exposition of the facts of the instant case is necessary to demonstrate that joinder for trial was inappropriate under either the reciprocal admissibility of evidence test for the simple and distinct proof test. The first victim, Butler, was found on the morning of March 17, 1974, fully clad and submerged in running water in the bathtub of his apartment. He had been strangled with bare hands. Appellant is the last person known to have been with him before his death and he admitted to drinking with Butler for about 20 minutes beginning at 11:30 p. m. on March 15. Appellant claims then to have gone upstairs and to bed, his apartment being in the same building as that of the decedent. Appellant's assertion that he stayed in Butler's apartment for about 20 minutes was put in question by the fact that two record albums appellant allegedly listened to with Butler required at least 16 minutes per side to play. In addition, neighbors of the victim heard conversation and other assorted noises emanating from the victim's apartment until about 3 o'clock on the morning of March 16. However, appellant's account of the events was corroborated by his wife. A partially filled bottle of Scotch found in Butler's bathroom contained appellant's fingerprints. In an interview with police on the day Butler's body was found, appellant said that during his visit the decedent had poured all the drinks. However, upon reading a copy of this statement, appellant changed it to read that he had poured a couple of the drinks himself.

4. The dissimilarities in the two homicides and their separation as to time of occurrence by nearly six months excludes any theory of common scheme or plan.

According to the government's evidence, Butler's death occurred 12 to 24 hours (or earlier) before the initial examination of his body at 10:45 a. m., March 17. The body had been submerged in the cold running water which could have had a preservative effect. Therefore, Butler could have died between the early morning hours of March 16, and 10 o'clock that night. Thus, the government's evidence puts appellant with Butler only at the earliest possible point of death, leaves many subsequent hours during which death could have occurred, and does not exclude the possibility that another person intervened.

Handy, the second victim, was discovered on September 4, 1974, lying in the back of his truck. He had been strangled with a wire-like ligature. His death occurred five-and-one-half months after that of Butler and at a location 15 blocks away. Appellant and Handy were at times employed by the same person. Handy was last seen alive drinking with appellant and a night watchman at a building owned by their common employer. The son of the employer saw appellant and the night watchman drinking together at 4 a. m. on the night of the killing. However, appellant claims to have been driven home by Handy before that time, arriving between 1:00 and 1:30 a. m., and then going to bed. The night watchman substantiated appellant's story to the extent that he said appellant left with Handy about midnight; the watchman did not see either of them subsequently. Appellant's version of events was again supported by his wife. There was a discrepancy in appellant's testimony to the extent that he claimed that on their way home he and Handy had helped the police in aiding an accident victim. The victim was said to have been pinned in his car and to have had a lacerated right shoulder. Police traffic division records attested to at trial reflected that no police accident report had been filed respecting this asserted event. On cross-examination, the police officer testifying about the record of accidents stated that the fact that there was no entry in the log did not mean that the accident did not take place. Finally, the government's evidence placed the time of Handy's death at a minimum of 8 and a maximum of 24 hours before the initial examination of his body on the afternoon of September 4. Thus, the government's evidence puts appellant with Handy within the period when death could have occurred, but it leaves perhaps six or more hours during which someone else could have intervened.

In its opposition to the motion for severance of counts, the government argued that a number of details shared by the two crimes were sufficiently unusual and distinctive so as to create a reasonable probability that the same person committed both crimes. Some of these asserted similarities failed of precise proof or appear otherwise to be of less probative value than that ascribed to them by the government. Although the government pointed to the fact that both homicides were by strangulation, the methods used differed—Butler was strangled with bare hands whereas Handy was choked with a ligature. The government also placed great emphasis on the similarity of injuries suffered by each decedent during or just before strangulation.

The prosecution adduced expert testimony that none of the other eight strangulation victims in the District of Columbia during 1974 bore such a similar pattern of injuries to the head, neck, and chest as did Handy and Butler. However, of the ten strangulation homicides in 1974, only three involved male victims: Butler, Handy, and a 21-year-old man. According to expert testimony, sex and age probably affect the types of injuries suffered by any given victim. Therefore, it should not be found unusual that two older male victims would exhibit a pattern of injuries different from that of a much younger male victim, or from younger female victims. Nor was the universe of victims large enough to

provide an adequate base from which to conclude that the injuries to Butler and Handy were of such a unique character as to suggest a signature of the killer. To be sure, both victims had, among other injuries, chest fractures revealing pressure in that area. This fact we think is insufficient to aid in concluding that the relatively larger appellant was probably the common assailant.

The government also characterized the victims as elderly men of slight build, but this was an oversimplification. Butler was 12 years older than Handy's 52 years, and thus age in this context is lacking in significance. Moreover, the two weighed about the same but differed in height by as much as three inches, indicating a dissimilarity in build. The government further asserted that both victims were last seen alive while drinking with appellant, whose drinking the government said caused appellant to become "physical" and "erratic and aggressive". But the government's evidence on the aggressive behavior of appellant when drinking consisted merely of appellant's employer testifying that he "could always tell if [appellant] had a drink. He would become playful with me." By this the employer meant that appellant had once lifted him off the ground to demonstrate his strength. Such behavior does not in our view warrant the implication of an "erratic and aggressive" behavior characterization sufficient to have any significance on the identity issue in this case.

The government additionally claims that such social drinking with the victims occurred within a few hours of each victim's death—put by the government in both cases at between 1 and 4 o'clock in the morning. But the drinking could not be shown

to have occurred less than several hours before either death. The time of death in both cases could only be estimated over an extended period of time well in excess of the 3-hour period so crucial to the government's position.

■ Finally, the crimes occurred almost six months apart, were distant in location, and no motive was shown for either homicide. Under the particular facts of this case, we are unable to conclude that such proof points with enough certitude on the issue of identity to be a persuasive factor for joinder. There is no such concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed as would justify a rational conclusion that appellant, to the exclusion of others, was the killer.[5]

The government relies heavily on *United States v. Woods*, 484 F.2d 127 (4th Cir. 1973), *cert. denied*, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974), in urging that the evidence of each offense in the instant case is probative of the identity of the perpetrator of both. Yet, the court in *Woods* was dealing with a large number of infants who had been in one woman's custody. The collective weight of such instances— nine—and the special nature of infanticide or child abuse were stressed by that court as determinative. We believe such differences distinguish *Woods* from the instant appeal.

■ The present case also does not meet the "simple and distinct" test formulated in *Dunaway v. United States, supra*. Once the "identity exception" to the "other crimes" rule has been rejected, the points of potential similarity cut the other way. Every suggestion at trial that the two

5. The government observes that appellant gave a number of statements about both homicides which were impeached and which placed him at the scene of the offenses during periods of time he said he was not there. These inconsistencies as to each homicide are no

doubt probative of general credibility. However, they do not rise to the level of "unusual and distinctive facts," the concurrence of which would justify their inclusion in the formula for resolution of the joinder issue.

crimes were in some way similar increased the likelihood that the jury became confused or misused the evidence. *See Drew v. United States, supra* at 17, 331 F.2d at 94. The essence of the "simple and distinct" test is that the evidence be such that the jury is unlikely to be confused by it or misuse it. Such potential misuse is apparent in the instant case where the danger that the jury cumulated the evidence to find guilt under both charges was great. Proof of one charge cannot be made to carry the other. As the court stated in *Kidwell v. United States*, 38 App.D.C. 566, 570 (1912):

> [Consolidation] should not be permitted where the crimes charged are of such a nature that the jury might regard one as corroborative of the other, when, in fact, no corroboration exists. . . .

We hold that any corroborative impact as to identity that one offense had on the other extended into the realm of speculation which is the threshold for misjoinder. Even the arguable points of similarity in these two homicides failed to point with sufficient certainty to common identification. For these reasons, we find that there was undue prejudice in the joinder at trial.

Appellant contends that the evidence presented was insufficient to support his convictions and, therefore, the trial court should have granted his motions for judgment of acquittal. We note, however, that the trial court denied the motions after having considered the evidence of the crimes at a joint trial. Whether the trial court would have found the evidence sufficient as to either crime considered separately cannot be determined and therefore it is not appropriate or necessary for this court to rule initially on the issue.

Accordingly, the judgments of conviction are reversed and the case is remanded.

*So ordered.*