Russell **WINESTOCK**, Appellant,

v.

**UNITED STATES of America, Appellee.**

**No. 13775.**

District of Columbia Court of Appeals.

Argued Nov. 4, 1980.

Decided April 1, 1981.

Greta Van Susteren, Washington, D. C., Stuart Stiller Fellow, with whom William Genego and Jerry Kristal, Georgetown Legal Intern Program, Washington, D. C., were on brief, for appellant.

Ronald Dixon, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Michael W. Ferrell, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

Before NEWMAN, Chief Judge, NEBEKER, Associate Judge, and SCHWELB *, Associate Judge, Superior Court of the District of Columbia.

SCHWELB, Associate Judge:

Following a jury trial, appellant Russell Winestock was convicted of armed robbery, D.C.Code 1973 §§ 22–2901, –3202; assault on two police officers with a dangerous weapon, D.C.Code 1973 § 22–505(b); and the unlawful possession of a dangerous drug, D.C.Code 1973 § 33–402(a). On appeal, he seeks a new trial, arguing that the motions judge improperly denied his pretrial motion for two separate trials based on an alleged misjoinder of offenses, and that the trial judge committed reversible error by responding to notes from the jury outside the presence of appellant and his counsel. Finding that the offenses were properly joined and that, although the trial judge committed error in his communication with the jury, that error was harmless beyond a reasonable doubt, we affirm.

I

This appeal arises from the prosecution of appellant for two separate incidents of armed robbery which occurred within one hour or less of each other a few blocks apart in the U Street area of Northwest Washington. The victim of the earlier robbery was Melvin Edmondson. The individuals robbed in the second incident were Norman Tyler and Joseph Atkinson. Appellant was charged with both of these offenses in a single 14 count indictment. Counts 1–3 charged him with the armed robbery of Edmondson and certain lesser included offenses. Counts 4–14 concerned the Tyler-Atkinson robbery and offenses that arose out of that incident.

Among the pretrial motions filed by the defense was a "Motion to Compel Separate Trials Because of Misjoinder." Appellant contended that counts 1–3 of the indictment were improperly joined for trial with counts 4–14, as they did not meet the requirements

of Super.Ct.Cr.R. 8(a) that they be of "the same or similar character" or parts of a "common scheme or plan." In the alternative, appellant asked for a severance pursuant to Super.Ct.Cr.R. 14. On October 17, 1977, the motion for separate trials was denied by the Honorable Fred B. Ugast. On January 31, 1978, appellant went to trial before a jury on the entire 14 count indictment, with the Honorable Fred L. McIntyre presiding.

Appellant presented separate defenses to the two incidents. He denied being present or in any way involved in the Edmondson robbery. He presented a defense of duress or coercion to the Tyler-Atkinson charges, admitting that he was present, but contending that he was a victim rather than a willing participant in the offense.

The trial was completed on February 1, 1978, and jury deliberation began on the same day, continuing to February 2, 1978, when the jury reached agreement on five counts. Appellant was found guilty of the armed robbery of Norman Tyler and Joseph Atkinson, assault on two police officers with a dangerous weapon, and unlawful possession of a narcotic drug, but not guilty of the armed robbery of Melvin Edmondson. On July 19, 1978, he was sentenced to concurrent terms of imprisonment of four to sixteen years for each armed robbery, one to three years for the assaults on police officers, and not more than one year for unlawful possession. This appeal followed.

## II

The prosecution introduced evidence at the trial tending to show that on May 10, 1977, between 11:15 and 11:30 p. m., Melvin Edmondson was on his way home. As he approached the corner of 12th and U Streets, N.W., he encountered two men and a woman. One of the trio asked Edmondson for a cigarette or a light, and as Edmondson paused, one of the males, a short man, announced "this is a stick-up," "give it up," or something to that effect. The command for money was made by the short man, who was holding a gun. The other

male, a taller man, approached Edmondson and removed his money, a watch and a ring. After the robbers obtained their loot, and after one of them had admonished Edmondson not to move, they fled the scene. They were last seen going in the direction of Northwest T Street. Edmondson found a police officer, Donald Jackson, on U Street and told him that he had been robbed. He later identified appellant from a photo array, at a lineup, and at trial, as the taller of the two robbers.

Between 11:30 p. m. on May 10, 1977 and 12:30 a. m. on May 11, Norman Tyler and Joseph Atkinson were walking in the area of 15th and U Streets, N.W., about three blocks from the locale of the Edmondson incident, when they were approached by two men.[1] The shorter of the two held a pistol and demanded money, saying "this is it," "we want money," or words to that effect. The short man told Tyler and Atkinson to walk into a nearby alley, but Tyler refused and the short man pushed him. Tyler and Atkinson were compelled to face a wall and were searched. The robbers took money and keys from Tyler and keys from Atkinson. Tyler's keys were attached to a key ring which carried his name and address. As the robbery was proceeding, someone yelled "freeze," and the robbers began to "fade away" deeper into the alley. Two police officers, David Wright and James McManus, arrived on the scene and attempted to stop the robbery in the alley. They were fired upon but not injured.

When the shooting was over, Tyler and Atkinson approached the police officers and told them what had happened. The officers then proceeded with the complainants to 15th and T Streets, just around the corner from the robbery. When they arrived, appellant was being pulled from underneath a parked car by two other police officers, Grace Hennessey and Duane Anderson. Appellant was identified as the tall man whom McManus and Wright had observed running from the alley.

---

1. It was not alleged that a woman was present at the second robbery.

Officers Hennessey and Anderson, after being alerted by radio that an armed robbery was in progress, proceeded to 14th and T Streets. When they arrived with their emergency lights flashing, they saw appellant running alongside a moving car. He attempted unsuccessfully to get into the car by reaching for a door handle. Appellant was then observed diving underneath a parked car. The officers approached the parked car and pulled appellant out. Hennessey recovered a manila envelope, keys, and money. from the underside of the parked car. Heroin was found in the manila envelope. Tyler's keys, with his name and address, were found in appellant's coat pocket. After his arrest, appellant was identified by the complainants from photographs and at a lineup.

Appellant was the sole witness for the defense. He denied robbing Edmondson and provided his own version of the incident relating to Tyler and Atkinson. He testified that on May 10, 1977, at approximately 11:45 p. m., he was on his way to 9th and U Streets, N.W., to catch a bus home. As he approached 15th and U Streets, a short man with a gun forced him and two men later identified as Tyler and Atkinson into an alley. The short man ordered the complainants to face a wall in the alley and told appellant to search them. Appellant removed money and keys from Tyler's pocket, and the short man took the money. Before the short man could take Tyler's keys from appellant, however, a car pulled up. Two people came out of the car and the short man began to fire at them. Appellant panicked and ran. As he did so, he saw a car that had been parked in the alley. Appellant, who was attempting to avoid being shot, ran past this car onto Carolina Street.

He saw the car again, but did not attempt to enter it. At 15th and T Streets he jumped under a parked car because, as he put it, he "didn't know what was going to happen." The police removed him from under the car and found Tyler's keys in his pocket, where he had put them because he was running and "didn't place any value on them." He remembered that the police picked something up from the parked car but he did not know what that object was. Appellant explained to the police that he had been robbed and that he had run when the gunfire started because he was afraid for his life.

Appellant does not contend, nor could he plausibly do so, that the prosecution's evidence, if believed by the jury, was insufficient to support a conviction for the robbery of Tyler and Atkinson. He claims, however, that his conviction rests upon a misjoinder of offenses and an improper communication by the trial judge to the jury.

### III

A. Appellant's first contention on appeal is that the motions judge erred in denying his pretrial motion for separate trials. He claims that the two armed robberies were improperly joined under Super. Ct.Cr.R. 8(a). Relying primarily on *Tinsley v. United States*, D.C.App., 368 A.2d 531 (1976), appellant asserts that in this jurisdiction, the propriety of joinder of offenses under Rule 8(a) is determined by a reciprocal admissibility test, and that joinder is permitted only where evidence of one offense would be admissible at a trial of the other under the rule of *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).[2] Appellant contends that the only possible basis under *Drew* for permitting evidence of each of the two robberies to be

2. In *Drew*, the United States Court of Appeals explained the rule as follows:

It is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged. Since the likelihood that juries will make such an improper inference is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some sub-

stantial, legitimate purpose. The same dangers appear to exist when two crimes are joined for trial, and the same principles of prophylaxis are applicable.

Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the

admitted at the trial of the other would be that such evidence would be relevant to the identity of the person who committed the crime. He argues that in the present case the similarities between the two offenses were substantially outweighed by the differences between them[3] and were not sufficiently "unusual" or "distinctive," *see Tins-* *ley, supra,* at 534,[4] to satisfy the requirements of *Drew.* Accordingly, appellant urges that the conviction must be reversed, for "a claim of misjoinder under [Rule 8(a)] is reviewable on appeal as a question of law," rather than for abuse of discretion. *United States v. Levine,* 546 F.2d 658, 661 (5th Cir. 1977). Just as a trial court is

person charged with the commission of the crime on trial. When the evidence is relevant and important to one of these five issues, it is generally conceded that the preju-

dicial effect may be outweighed by the probative value. [*Id.* at 15–16, 331 F.2d at 89–90.]

3. In his brief on appeal, appellant summarizes the differences and similarities between the two crimes as follows:

### Differences

| Counts 1-3 | Counts 4-14 |
|---|---|
| Place:—on a street corner; | —pushed from street into an alley; |
| Number of victims:—one; | —two; |
| Number of robbers and sex:—three two males, one female; | —two males; |
| Initiated by:—asking for a cigarette or light; | —confronting and making immediate robbery demand; |
| Demand words:—"This is a stickup; give it up"; | —simply stated they wanted money; |
| Use of gun:—pulled from a bag; | —drawn at the outset and waved around; |
| Use of force:—only when complainant refused to comply; | —immediately pushed into an alley and up against a wall; |
| Items taken:—money and a ring and watch; | —money and keys from pocket, no rings or watches or other valuables; |
| Escape:—all three escaped on foot; | —automobile used by one; |
| Description:—taller male had a beard; about 6'3", medium build, other male shorter; | —one was a "short fellow" and the other seemed a little taller, and taller of the two did not have a beard. |

### Similarities

| | |
|---|---|
| Time:—between 11:15 & 11:30 p.m. May 10, 1977 | —between 11:30 and 12:00 May 10, 1977 |
| Place:—12th & U Streets, N.W. | —1500 block of U Street, N.W. |
| Gun possessed by:—shorter male | —shorter male. |

Although the government argues that there were additional similarities (*e. g.,* the taller man was always wearing a coat), we think the foregoing table a reasonably accurate summary.

4. *Cf. Crisafi v. United States,* D.C.App., 383 A.2d 1, 11 (1978) (motion for severance denied where "Appellant's *modus operandi* in each case presents virtually a textbook illustration of a signature crime.")

required to grant relief where misjoinder exists, appellant continues, so "when an appellate court is faced with a decision below erroneously sustaining joinder, it should reverse and order separate trials." 8 Moore's Federal Practice ¶ 8.04(2), at 8–14 (1980).

■ We think that appellant's position must fail because it rests on a faulty premise. Contrary to appellant's contention, the propriety of initial joinder under Rule 8(a) does not depend on reciprocal admissibility as determined by the evidence but on the general similarity between the offenses as alleged in the indictment. Lack of reciprocal admissibility is relevant and often decisive in a motion for a severance pursuant to Super.Ct.Cr.R. 14 in which prejudicial joinder is asserted. Appellant has not, however, pressed his rights under Rule 14 on this appeal. Assuming *arguendo* that this issue has been adequately preserved, he may prevail on appeal only by carrying the heavy burden of demonstrating a clear abuse of discretion on the part of the court below, and this he has failed to do. *See Arnold v. United States*, D.C.App., 358 A.2d 335, 339 (1976); *United States v. Rhodes*, 569 F.2d 384, 390 (5th Cir. 1978).

B. In analyzing the issues in this case, it is important at the outset to differentiate between initial misjoinder under Super.Ct. Cr.R. 8(a) and the denial of a motion for severance for prejudicial joinder under Rule 14, for the considerations applicable to the two kinds of motions are entirely different. Because of the similarity between the two rules in terms of relief sought and terminology, courts and commentators are sometimes insufficiently precise in articulating which of the two issues is being addressed. *See* 8 Moore's Federal Practice, *supra*, ¶ 8.02[1], at 8–4. The actual relationship between the two rules is, however, relatively clear and simple.

Rule 8(a), which is identical to its counterpart in the Federal Rules of Criminal Procedure, provides as follows:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The language of Rule 8(a) is also identical to that of D.C.Code 1973, § 23–311(a), so that the Rule has explicit legislative approval.

■ As noted above, Rule 8(a) permits the initial joinder in a single indictment of offenses which are "of the same or similar character." "When a pretrial motion claims misjoinder of . . . offenses, the court ordinarily determines the motion on the basis of the indictment alone." 8 Moore's Federal Practice, *supra*, ¶ 8.06.3, p. 8–39. *Cf. Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). Objections on the grounds of misjoinder are "based on defects in the indictment" within the meaning of Rule 12(b)(2). 8 Moore's Federal Practice *supra* ¶ 8.02.2, at 8–4, n.12. Accordingly, if the indictment charges two or more "similar" offenses, then these offenses are properly joined. A motion for severance under Rule 14 may, however, be granted in the discretion of the court upon a showing of undue prejudice, even if the offenses were properly joined.

Because similarity of offenses is determined by the content of the indictment, it cannot, as appellant contends, depend on whether or not the evidence would support reciprocal admissibility. Rather, the courts examine the indictment to determine whether the counts sought to be joined allege the same general kinds of crimes. If they are not sufficiently similar then joinder will not be permitted. Where, as in the present case, the two crimes both involve armed robberies which were closely related in time and place, it cannot plausibly be maintained that they are insufficiently sim-

ilar to one another to warrant initial joinder under Rule 8(a).[5]

*Drew v. United States, supra,* on which appellant places heavy reliance, undercuts his argument. In that case, the defendant was charged with the robbery of one store belonging to High's Dairy Products Corp. on July 27, 1962 and the attempted robbery of a different High's neighborhood store on August 13 of the same year. The court explicitly found that

> here, the joinder in the indictment under Rule 8(a) was permissible since the two crimes are similar in nature. [*Id.* 118 U.S.App.D.C. at 13, 331 F.2d at 87.]

Turning to the defendant's motion for severance, the Court held that separate trials should have been granted because the evidence of each crime would have been inadmissible at the trial of the other and because the evidence of the two was not so separate and so distinct "that the likelihood of the jury having considered evidence of one as corroborative of the other is insubstantial." *Id.* at 17 n.14, 331 F.2d at 91 n.14, citing *Dunaway v. United States,* 92 U.S.App.D.C. 299, 302–03, 205 F.2d 23, 26–27 (1953). *Drew* thus conclusively establishes that reciprocal admissibility is not a prerequisite for initial joinder, and that a subsequent finding that evidence of two offenses is not reciprocally admissible does not impair the conclusion that the offenses were properly joined.

*Tinsley v. United States, supra,* on which appellant relies, contains language which, if read superficially, would appear to support appellant's position. In that case, the defendant was tried on a single indictment charging two separate murders, one of which occurred five and one half months after the other at a location fifteen blocks from the first. The court described the case as raising the "issue of the propriety of joinder and the denial of a timely motion for severance." *Id.* at 532–33. After quoting from Rules 8(a) and 14 and identifying the issue as being "whether the trial record reveals a possibility of undue prejudice by

reason of such joinder as to require reversal," *ibid.* at 533, the court said:

> The appropriateness of *joinder* in evidence-of-other-crimes cases must be determined by balancing inevitable prejudice to the defendant caused by the *joinder* against the legitimate probative force of the evidence and expedition in judicial administration. *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). In cases not involving reciprocal admissibility of evidence, joinder may be permitted if the offenses involved are fairly separable by simple and distinct proof. (Emphasis added).

Appellant infers from the court's use of the word "joinder" in this context that the propriety of initial joinder depends on reciprocal admissibility.

Although the quoted passage demonstrates the perils inherent in the use in the Rules of similar phraseology to cover related but different concepts, a reading of the *Tinsley* opinion as a whole demonstrates that the court was not in fact connecting reciprocal admissibility to initial joinder (Rule 8(a)) but to severance for prejudicial joinder (Rule 14). The quoted passage relies on *Drew,* in which joinder was held proper despite the lack of reciprocal admissibility, and we are satisfied that the *Tinsley* court did not intend to reach a result in conflict with that in *Drew.* Moreover, the court identified the government's argument that the two crimes were so unusual and distinctive as to establish reciprocal admissibility as having been contained in its "opposition to the motion for severance of counts." *Ibid.* at 535. Albeit somewhat obliquely, the *Tinsley* opinion itself properly connects the question of reciprocal admissibility to the issue of relief from prejudicial joinder by motion for severance pursuant to Rule 14.

Our construction of *Tinsley* as having been decided pursuant to Rule 14 and as not having injected reciprocal admissibility into Rule 8(a) motions is further bolstered by other decisions of this court both before and

**5.** *Cf. Pummill v. United States,* 297 F.2d 34 (8th Cir. 1961) (upholding the joinder in a single indictment of two robberies which occurred almost a year apart).

after *Tinsley. See, e. g., Coleman v. United States,* D.C.App., 298 A.2d 40, 42, n.1 (1972) (claim of misjoinder of two burglaries several days apart summarily rejected); *Roldan v. United States,* D.C.App., 353 A.2d 292 (1976) (charges based on two incidents of theft one week apart properly joined as similar in character); *Bridges v. United States,* D.C.App., 381 A.2d 1073, 1075 (1977) (four rapes in Southeast Washington over a period of six months properly joined since crimes were of "similar character"). *See also Bradley v. United States,* 140 U.S.App. D.C. 7, 11, 433 F.2d 1113, 1117 (1969) (two housebreakings nine days apart properly joined, but subject to meritorious motion for severance). In each of these cases, the Rule 8(a) question was disposed of swiftly and conclusively without inquiry into the details of the crimes, and the question of reciprocal admissibility and evidentiary similarities was addressed, if at all, only in connection with the granting or denial of a motion for severance under Rule 14.

■ We are not unmindful of scholarly and other criticisms of the provision of Rule 8(a) authorizing joinder of offenses of a similar character. *See* 8 Moore's Federal Practice, *supra,* ¶ 8.05[2], p. 8–19; ABA Standards Relating to Joinder and Severance No. 22, quoted in *United States v. Burkley,* 192 U.S.App.D.C. 294, 312 n.37, 591 F.2d 903, 921 n.37 (1978), *cert. denied* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979). Such joinder has been permitted in

this jurisdiction, both by court rule and by legislative enactment, however, and the merit or lack of merit of these criticisms is not before us. Accordingly, we hold that the two armed robberies with which appellant was charged were of "the same or similar character" within the meaning of Rule 8(a), and that they were therefore properly joined in the indictment.[6]

C. As previously noted, appellant's pretrial motion for separate trials, while based in the first instance on alleged misjoinder in violation of Rule 8(a), prayed in the alternative for a severance pursuant to Super.Ct. Cr.R. 14.[7] It appears, however, that appellant has effectively abandoned his Rule 14 contention on appeal. Indeed, the only mention of Rule 14 in his appellate brief is in a footnote[8] in which appellant disclaims any obligation to establish that he has been "unduly prejudiced" because no such showing is required under Rule 8(a). At oral argument, counsel for appellant repeated that the appeal is based on Rule 8(a), not Rule 14.[9]

■ Even if we were to treat the Rule 14 issue as having been preserved by implication—and we do not believe that we may properly do so[10]—appellant has failed to make the kind of showing which would be necessary to warrant our overturning his conviction. An order denying severance under Rule 14 may be reversed only upon a clear showing of abuse of discretion. *Arnold v. United States, supra* at 339; *Roldan*

---

6. The result which we have reached on this issue is also consistent with the decisions of federal appellate courts construing the identically worded Rule 8(a) of the Federal Rules of Criminal Procedure. *See, e. g., United States v. Sanders,* 463 F.2d 1086, 1089 (8th Cir. 1972); *Howard v. United States,* 372 F.2d 294, 301 (9th Cir. 1967); *Edwards v. Squier,* 178 F.2d 758 (9th Cir. 1949).

7. That Rule and identically phrased D.C.Code 1973, § 23–313 provide in pertinent part as follows:

   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

8. See appellant's brief, p. 8 note 4.

9. So far as we can determine from the record, appellant did not renew his motion for a severance at any stage of the trial, and Judge McIntyre never had occasion to consider any actual prejudice which may have resulted from the fact that two separate robberies were tried together.

10. In the light of the occasional confusion between Rules 8 and 14, we would be disposed to consider the merits of an adequate showing of prejudice had appellant made one, even if he had relied on Rule 8(a) rather than Rule 14. As noted in the text below, however, no such showing has been made.

*v. United States, supra* at 294; *Coleman v. United States, supra* at 42. In order to establish that the trial judge has abused his discretion in denying him a severance, a defendant must show "the most compelling prejudice," *United States v. Rhodes*, 569 F.2d 384, 390 (5th Cir. 1978), from which "the court would be unable to afford protection" if both offenses were tried together. *United States v. Swanson*, 572 F.2d 523, 528 (5th Cir. 1978). That burden is a "difficult" one. *United States v. Harris*, 542 F.2d 1283, 1312 (7th Cir. 1976). It is not sufficient to show that the defendant would have a better chance of acquittal if the charges were tried separately. *United States v. Lord*, 565 F.2d 831, 839 (2d Cir. 1977).

■ "Whenever similar but unrelated offenses are charged in an indictment to a single defendant, there is a possibility of prejudice." *Arnold v. United States, supra* at 338. Such a showing by a defendant is, however, insufficient. *Ibid.* at 338, citing *Cupo v. United States*, 123 U.S.App.D.C. 324, 359 F.2d 990 (1966), *cert. denied*, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967). Where the evidence of the two crimes is reciprocally admissible, severance will be denied, and

> courts, including our own, have found no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials. [*Arnold v. United States, supra* at 338, quoting *Drew v. United States, supra* 118 U.S.App.D.C. at 17, 331 F.2d at 91.]

Assuming, *arguendo*, and without reaching the issue, that the evidence of the two robberies in the present case was not reciprocally admissible and that a trial judge would have obliged upon proper objection to exclude evidence of one at a trial of the other, appellant has failed to establish that the facts of the two crimes were not and could not be kept "separate and distinct,

and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass." *Bridges v. United States*, D.C.App., 381 A.2d 1073, 1075 (1977). When the motion for severance was first made before the motions judge, it was surely reasonable for that judge to hold that there was some possibility that the trial judge would be able to maintain the necessary distinctness between the two robberies to avoid their prejudicial amalgamation by the jury. It was not an abuse of discretion for Judge Ugast to believe that here, as in *Bowyer v. United States*, D.C.App., 422 A.2d 973, 977 (1980), there was little likelihood of the charges being confused or treated as one event.[11] In denying severance before trial, Judge Ugast was free to consider the fact that, in the event that developments at the trial enhanced the possibility of prejudice, appellant could renew his motion for severance at that time.

At the trial, however, appellant never did so. In the absence of a motion from appellant, the trial judge could hardly have been expected, once jeopardy had attached, to order a severance, *sua sponte*, thus potentially precluding appellant's retrial. As Professor Moore has aptly explained:

> Often, a motion for severance is made before trial, and additional circumstances develop at the trial which either aggravate existing prejudice, or demonstrate new prejudice. Such circumstances make reconsideration of the pretrial denial appropriate. If additional circumstances do arise, defense counsel must either renew the motion for severance or assume the risk that an appellate court will refuse to review the question because the trial court did not have an opportunity to do so. [8 Moore's Federal Practice, *supra*, ¶ 14, at 14–12—14–13.]

In the present case, appellant neither renewed his motion for severance at trial nor pressed the issue on appeal. Our reading of the record discloses no clear error or mani-

---

11. That appellant was acquitted of the charges stemming from the robbery of Edmondson suggests that the jurors were in fact able to keep the allegations separate and distinct. We do not, however, rest our decision on the fact of partial acquittal, but rather on appellant's failure to make the requisite showing of prejudice.

fest unfairness requiring appellate intervention on the record as it stands. Accordingly, we hold that appellant's rights were not violated when he was tried for both robberies at a single trial.

## IV

Appellant's second contention on appeal is that the trial judge committed reversible error by communicating with the deliberating jury outside appellant's presence. The communications in question related to Judge McIntyre's responses to notes which the jury sent to him on the first day of deliberation. Unfortunately, the notes themselves have apparently been lost, and this appeal was initially filed with little in the appellate record to identify their content. On November 2, 1979, however, this court remanded the case for an evidentiary hearing to supplement the record as to the number and content of the jury's notes and the trial judge's responses. As a result of that hearing, the record is now sufficient to establish what in fact occurred.

The judge dismissed the jurors for lunch on February 1, 1978, and instructed them to return "at about quarter-after two" to begin their deliberations. At approximately 5:00 p. m., the jury was recalled to the courtroom and this colloquy followed:

THE COURT: Those notes you sent to me and I sent back, let me have those so I can put them on the record. From the questions you asked, ladies and gentlemen of the jury, I assume that you have not reached a unanimous verdict on any of the counts. Mr. Foreman, you have not reached a unanimous verdict?

THE FOREMAN: Only on the first one, sir.

THE COURT: Then don't discuss this case among or with anybody else this evening. Report back to the jury room at ten o'clock tomorrow morning and when all twelve of you are there in the jury room and the marshal is on the outside of the door, you continue with your deliberations. Is that clear?

The jury left the courtroom and the court went on to read the questions asked by the jury:

THE COURT: As to the written questions sent out to the court by the foreman of the jury:

(1) Transcript of the first officer's report or description of the first robbery.

(2) Mr. Winestock's statement on the night of arrest. Signed: John Hibel.

Written answer by the court as to the first question:

No transcript in evidence of the first officer's description of the first robbery. The tapes contained a description that went out over the police radio system.

As to the second question,

The written statement of Winestock was not admitted in evidence. Signed: Judge McIntyre.

On February 2, 1978, the jury announced its verdict. It is undisputed that appellant and his counsel were not in the courtroom when the trial judge received or responded to the jurors' notes, nor was appellant accorded the opportunity to suggest what the judge's responses to the notes should be.

The United States concedes, as it must, that it was error for the trial judge to communicate with the jury at all outside the presence of appellant and his attorney. As correctly stated in the government's brief:

[A] defendant and his counsel have a right to be informed of all communications from the jury and to offer their reactions before the trial judge undertakes to respond. *Smith v. United States*, D.C.App., 389 A.2d 1356, 1361 (1978); *accord, Rogers v. United States*, 422 U.S. 35, 39 [95 S.Ct. 2091, 2094–2095, 45 L.Ed.2d 1] (1975); *Shields v. United States*, 273 U.S. 583, 587–588 [47 S.Ct. 478, 479, 71 L.Ed. 787] (1927); *Roberts v. United States*, D.C.App., 402 A.2d 441, 443 (1979); *see* Super.Ct.R.Crim.P. 43(a). It is error for a trial judge to receive and respond to a note outside the presence of appellant and his counsel.

■ Since the United States concedes that there was error, the only issue before us with respect to the judge's communications with the jury is whether that error was harmless or prejudicial. As the court explained in *Wade v. United States*, 142 U.S.App.D.C. 356, 360, 441 F.2d 1046, 1050 (1971):

> the standard by which to determine whether reversible error occurred ... is not whether the accused was actually prejudiced, but whether there is any reasonable possibility of prejudice.

The error was "presumptively injurious," cf. *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 82, 39 S.Ct. 435, 437, 63 L.Ed. 853 (1919). Moreover, appellant's right to be present at all stages of his trial is of constitutional dimension, *Wade v. United States, supra*, 142 U.S.App.D.C. at 360, 441 F.2d at 1050, and we therefore agree with appellant that the United States must show that the error was harmless beyond a reasonable doubt. *Miller v. United States*, D.C.App., 250 A.2d 573, 575 (1969); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1968).

As counsel for appellant had no opportunity to provide the trial judge with his views as to what the response to the jury's notes should be, we cannot say with mathematical certainty that the error made no difference to the result. It is of course possible that, if appellant and his counsel had been present, they might have persuaded the trial court to respond differently, and that a different response might have resulted in a different verdict. That is true in every case in which an error of this kind has been made. If the denial of the opportunity to be present were treated as compelling reversal in every case without further inquiry, then such error would be prejudicial *per se* and the prosecution could never show that the error was harmless. Since *Chapman v. California, supra*, permits affirmance in a particular case if the government establishes that the error was harmless beyond a *reasonable* doubt, the

denial to appellant of the opportunity to suggest responses to the notes is not, *per se*, conclusive.

■ After careful consideration of the record, we think that the error in the present case was harmless beyond a reasonable doubt. The trial judge's direction to the jurors to continue deliberating after they had reached agreement on one of the counts but not on the others was entirely appropriate and could not reasonably be considered coercive, especially since the jurors had been deliberating for only a few hours. Cf. *Smith v. United States*, D.C. App., 389 A.2d 1356, 1360–61 (1978). While it is true, as appellant suggests, that a request for a mistrial could have been made, the court would have had no reason to grant one, and we see no reasonable possibility that the Court would have done so. We likewise perceive no basis for appellant's contention that the direction to continue deliberating "was ambiguous, confusing and may have coerced a verdict." On the contrary, that direction was the obvious and correct response.

Turning to the jury's request for the "transcript of the first officer's report or description of the first robbery," appellant concedes that the trial judge's response was correct in relating that no transcript of the original radio broadcast[12] was in evidence. The court did, in fact, allude to the tapes of the radio run, which appellant's counsel had moved into evidence, and which were available to the jury. Appellant complains that he was denied the opportunity to suggest the use of a stipulated transcript to assist the jurors in understanding the contents of the tapes. Jury deliberations having already commenced, however, it would have been a most unusual procedure to prepare and submit to the jury a new exhibit at so belated a stage of the proceeding. Apart from any attendant mechanical problems, there would have been a significant danger of highlighting one piece of evidence at the

---

**12.** Appellant suggests that the jury might have been asking for a transcript of the officer's trial testimony rather than of the radio broadcast.

If so, then the trial judge would surely and correctly have declined to provide a transcript of the testimony of a single witness.

expense of the remainder if the record had been reopened in the fashion suggested by appellant. Moreover, it is not without significance that this note from the jury referred to the "first robbery," and the first robbery, both in point of time and in order of proof to the jury, was that of Edmondson. Appellant having been acquitted of that crime, the possibility of prejudice is remote indeed.

Turning finally to the jury's request for appellant's prior written statement, the trial judge correctly advised the jurors that no such statement was in evidence. Appellant argues that the jurors "may have drawn a negative inference from their inability to test Mr. Winestock's testimony against such prior statement," and that "an admonition not to draw any inferences whatsoever from such failure would have been appropriate." Although appellant's suggested response might have been a plausible alternative, we believe that the trial judge's responses to this note, as well as to the others, were facially benign, unambiguous, and complete. *Roberts v. United States, supra* at 443. Accordingly, we find no error warranting reversal under *Chapman* and affirm appellant's convictions.

*Affirmed.*