**Stanley D. MORRIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Jerry T. MARTIN, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 86–950, 86–1097.

District of Columbia Court of Appeals.

Argued Jan. 21, 1988.
Decided Oct. 20, 1988.

**1384**

Ellen Holzman, Student Counsel, with whom Robert D. Dinerstein, Supervising Atty., Washington, D.C. and Patrick J. Perrone, Student Counsel, were on the brief, for appellant Morris. Nancy L. Cook, Washington, D.C., also entered an appearance for appellant Morris.

Scott W. Howe, Public Defender Service, with whom James Klein and Jennifer P. Lyman, Public Defender Service, Washington, D.C., were on the brief, for appellant Martin.

Charles M. Steele, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

Appellants Stanley Morris and Jerry Martin were indicted on three counts of armed robbery[1] arising from the robbery of a vending truck on August 28, 1984. They were also charged in the same indictment with four counts of armed robbery and four counts of armed kidnapping[2] based on the robbery of another vending truck on August 30, 1984. In addition, Stanley Morris' brother, Jesse Morris, was charged as an accessory after the fact[3] of the August 30 robbery. Jesse Morris was also indicted for receiving stolen property[4] and obstruction of justice.[5] These charges were based on his alleged attempt to bribe one of the victims of the second robbery not to testify by offering to return certain property taken in that robbery. The three counts charging Jesse Morris alone were joined to the eleven counts charging the two appellants, so that Jesse Morris became their co-defendant.

Both appellants filed motions to sever counts and defendants under Super.Ct. Crim.R. 8(b) and 14, which were denied after a hearing by a pre-trial motions judge. When the case came before another judge for trial, appellants renewed their motions to sever, but they were again denied. The jury found both appellants guilty as charged; Jesse Morris, however, was acquitted on all counts.

Appellants now appeal from their convictions, arguing that the offenses of August 28 and August 30 were misjoined under Super.Ct.Crim.R. 8(b), and that the counts naming Jesse Morris as a defendant were misjoined with the counts charging Stanley Morris and Jerry Martin. The government concedes that there was misjoinder but argues that it was harmless error. We disagree, and accordingly we reverse all the convictions of both appellants.[6]

1. D.C.Code §§ 22–2901 (1981) and 22–3202 (1988 Supp.).

2. D.C.Code §§ 22–2101 (1981) and 22–3202 (1988 Supp.).

3. D.C.Code § 22–106 (1981).

4. D.C.Code § 22–3832 (1988 Supp.).

5. D.C.Code § 22–722(a)(3) (1988 Supp.).

6. Both appellants contend, in the alternative, that the trial court abused its discretion in denying severance under Super.Ct.Crim.R. 14. Appellant Martin additionally contends that reversal is required because of several instances of alleged prosecutorial misconduct. Since we re-

## I

James Hamms, Darryl Willis, and James Wills testified that they were robbed by the two appellants while working on a vending truck in the 2800 block of Robinson Place, S.E., on August 28. Appellant Martin approached Hamms, who was seated in the driver's seat, held a gun to his side, and said, "Okay. You know what this is." [7] A second gunman, identified in court by Wills and Willis as appellant Morris,[8] entered the passenger side and moved to the back of the truck, where he ordered Wills and Willis to stand by the freezer and tell him where the money was kept. Morris took the cash box, which contained $160, along with the change box, a quantity of cigarettes, and Hamms' wallet and camera. Martin removed a cassette player from the dashboard, rifled Hamms' pockets, and took the keys to the truck, warning Hamms not to follow him. The robbers then fled, tossing the keys beneath a nearby car.

Wade Campbell, David Williams, and Charles Allen testified about the robbery two days later of the vending truck in which they were working and about their subsequent kidnapping. At 10:30 p.m. on August 30, the three men were closing up their vending truck at Stanton and Sheridan Roads, S.E., when two men jumped into the back of the truck. A gunman wearing a stocking mask, whom all three victims identified as appellant Morris,[9] moved to the passenger side of the truck and pointed a gun at Campbell, who was in the driver's seat, saying, "You know what it is." A second man, unarmed and wearing a ski mask—identified by Campbell and Williams as appellant Martin—then tried to pull Campbell out of the driver's seat. Campbell started to drive off but stopped when Morris, now standing in the back

with Williams, Allen, and Dwayne Peeler, threatened to kill him if he moved the truck.

Martin searched Campbell's pockets, hit him in the mouth, and then drove the truck to a wooded area several blocks away. Allen was also hit, apparently by Morris (the testimony is not entirely clear on this point), when he did not react quickly enough to the robbers' commands. The robbers took cigarettes, $125 in cash, an "equalizer" (not further identified in the record), and Campbell's wrist watch, then fled with the truck keys. Campbell managed to coast the truck downhill to a pay telephone, from which he called the police. Later that evening, as they were being driven home by the truck's owner, Campbell and Williams spotted Morris and Martin with two others pouring water into a car radiator. They immediately alerted the police, and the two were arrested.

At a lineup about two weeks thereafter, Hamms and Wills identified both appellants, and Allen identified Morris. At another lineup a month later, and again from a photograph, Wills identified Martin as the other robber.

Campbell, Williams, and Allen also testified that Jesse Morris approached Campbell several times between August 30 and September 11, offering to return to him the stolen money and his wrist watch if he would cease helping the prosecution. In trying to bribe Campbell, Jesse Morris implicated his brother Stanley in the second robbery.

Appellants argued misidentification and presented alibi defenses for both robberies. Sharon Morris, appellant Morris' niece, testified that appellant was with her on the afternoon of August 28, watching her because she was in a high-risk pregnancy.

verse the convictions under Super.Ct.Crim.R. 8(b), we need not reach these issues.

**7.** Hamms identified Martin in court. Wills and Willis also identified Martin as the gunman who approached the driver's side of the truck, but they both testified that the other gunman spoke these words.

**8.** Hamms was unable to identify Morris because Martin had ordered him to look straight ahead.

Willis and Wills also saw a third, unidentified man standing near the rear window, apparently acting as a lookout.

**9.** A fourth victim, Dwayne Peeler, who was also in the back of the truck, was called as a witness by appellant Morris. He testified that Morris was not his assailant.

Ruth Morris, appellant's sister, and Lloyd Reese, a friend, testified that appellant was outside his home with some friends on the evening of August 30.

James Boyd, a friend of appellant Martin, testified that on August 28 he and Martin had spent the entire day together, working in Boyd's garage. Antoinette Ellis, Martin's former girl friend, said that she had had an argument with Martin at the garage around 4:00 p.m. that day, which Boyd verified. Ralph Calhoun, Martin's friend, and Caroline Perry, Martin's sister, testified that they were with Martin at 10:00 p.m. on August 30, when Calhoun and Martin left to put water in the radiator of Calhoun's car. The two then picked up a friend and returned to Calhoun's house, where Calhoun lent Martin the car at about 11:00 p.m.

None of the three defendants testified.

## II

There can be no doubt whatever that the counts based on the two robberies were improperly joined under Super.Ct.Crim.R. 8(b),and that the counts charging Jesse Morris were improperly joined with the counts charging Stanley Morris and Jerry Martin. *See Settles v. United States,* 522 A.2d 348, 352–354 (D.C.1987); *Ray v. United States,* 472 A.2d 854, 857–859 (D.C. 1984); *Davis v. United States,* 367 A.2d 1254, 1260–1263 (D.C.1976), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977); *Cupo v. United States,* 123 U.S. App.D.C. 324, 326–327, 359 F.2d 990, 992–993 (1966), *cert. denied,* 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967); *Ward v. United States,* 110 U.S.App.D.C. 136, 289 F.2d 877 (1961). The government concedes that the three sets of offenses were misjoined, but argues that the strength of its evidence and the court's instructions were sufficient to make the misjoinder harmless. We cannot agree.

We accept, of course, the government's premise that a misjoinder under Rule 8(b)

may in some cases be harmless error. *Settles v. United States, supra,* 522 A.2d at 354; *Wright v. United States,* 510 A.2d 223, 224 (D.C.1986); *see United States v. Lane,* 474 U.S. 438, 446–449, 106 S.Ct. 725, 730–732, 88 L.Ed.2d 725 (1986). To avoid reversal, however, the government must show that the misjoinder has had no "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946); *see Settles, supra,* 522 A.2d at 354. For example, a misjoinder may be found harmless "if all or substantially all of the evidence of one offense would be admissible in a separate trial of the other." *Ray v. United States, supra,* 472 A.2d at 859 (citations omitted); *see Settles, supra,* 522 A.2d at 354. A reviewing court may also take into account the strength of the government's evidence, as well as whether the trial court gave a proper limiting instruction at the appropriate time. *Id.* at 356 n. 11; *Wright v. United States, supra,* 510 A.2d at 225; *see United States v. Lane, supra,* 474 U.S. at 450, 106 S.Ct. at 732. Finally, we may consider whether any actual prejudice resulted from the misjoinder. *Settles v. United States, supra,* 522 A.2d at 355; *Ray v. United States, supra,* 472 A.2d at 859–860; *see United States v. Lane, supra,* 474 U.S. at 449, 106 S.Ct. at 732. Applying these factors to the instant case, we are unable to find the misjoinder harmless.

The government does not argue that evidence of the three groups of offenses was mutually admissible.[10] Instead, it focuses on the relative strength of the evidence as to each of the robberies, pointing out in its brief that "[i]n each instance each appellant was affirmatively identified by two or three of the three victims," so that there was "no danger ... that the relative weakness of one case was offset by the relative strength of the other." But there was no physical evidence linking either appellant to either robbery, and neither appellant was

---

**10.** "To determine whether evidence of [one] offense would be admissible in a separate trial for the other, we look for guidance to *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85

(1964)." *Settles v. United States, supra,* 522 A.2d at 354–355. The government does not assert mutual admissibility under any of the five so-called "*Drew* exceptions."

found with any of the robbery proceeds. Furthermore, the government witnesses' identifications were impeached by discrepancies and inconsistencies in their description of the two appellants. The trial was essentially a swearing contest in which identifications by the government witnesses were met by contradictory testimony from appellant's alibi witnesses.

There is a "presumptive possibility of prejudice to the defendant" resulting from improper joinder under Rule 8(b). *King v. United States*, 355 F.2d 700, 703 (1st Cir. 1966), quoted in *Davis v. United States, supra,* 367 A.2d at 1263. We need not decide whether the government's evidence need be "overwhelming"[11] or merely "compelling"[12] to rebut this "presumptive possibility," for we are satisfied that the evidence meets neither standard.

Furthermore, the record demonstrates actual prejudice to both appellants as a result of the misjoinder. The joinder of the charges involving Jesse Morris was clearly harmful to Stanley Morris because Jesse's out-of-court statements implicating his brother in the second robbery were admitted into evidence. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Sousa v. United States*, 400 A.2d 1036, 1043 (D.C.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). Jesse Morris' inculpatory statements also prejudiced Martin by implication, since he and Stanley Morris were tried as partners in the two robberies. Quite apart from Jesse Morris' statements, joinder of the third incident prejudiced both appellants because the attempted bribery of Wade Campbell involved a different defendant and different offenses. *Cupo v. United States, supra,* 123 U.S.App.D.C. at 327, 359 F.2d at 993.

The joinder of the first and second robberies also prejudiced both appellants. When two crimes are not so alike that they establish identity or common scheme, any similarities between the two raise a serious risk that the jury may cumulate the evidence and conclude that whoever committed one must also have committed the other. *Settles v. United States, supra,* 522 A.2d at 355; *Tinsley v. United States*, 368 A.2d 531, 536–537 (D.C.1976). The risk of misuse in this case was heightened by the prosecutor's efforts to link all the offenses together in his summation.[13] "Every suggestion at trial that the two crimes were in some way similar increased the likelihood that the jury became confused or misused the evidence." *Id.* (citation omitted). The prosecutor here not only argued that the two robberies were substantially similar, but stressed that any differences between the two resulted from appellants' learning from their mistakes after the first robbery and more carefully planning the second. In essence, he asked the jury to aggregate the evidence of the two crimes, contrary to the teaching of *Drew v. United States, supra,* note 10, and its progeny, and contrary as well to the trial court's instructions.[14]

For these reasons we conclude that the misjoinder was not harmless as to either appellant. The convictions of both appellants are reversed, and this case is remanded for further proceedings consistent with this opinion, including a new trial or trials.

*REVERSED AND REMANDED.*

---

**11.** *United States v. Lane, supra,* 474 U.S. at 450, 106 S.Ct. at 732; *see Settles v. United States, supra,* 522 A.2d at 356 n. 11.

**12.** *Wright v. United States, supra,* 510 A.2d at 225.

**13.** The government is represented by different counsel on appeal.

**14.** The government makes a *pro forma* argument (one sentence in its brief) that the trial court's instruction to consider the evidence separately as to each count and each defendant was sufficient to make the misjoinder harmless. In this case, as in *Settles,* we cannot agree, especially in light of the actual prejudice revealed by the record.