John L. EASTON, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 86–397.

District of Columbia Court of Appeals.

Submitted April 23, 1987.

Decided Nov. 25, 1987.

Jan Schneider, Washington, D.C., appointed by this court, was on the brief, for appellant.

Joseph E. diGenova, U.S. Atty., with whom Michael W. Farrell, John H. Palmer, Jr., and Joan C. Barton, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, NEWMAN and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellant was charged with armed robbery, D.C.Code §§ 22–2901, –3202 (1981 & 1987 Supp.); kidnapping while armed, D.C. Code §§ 22–2101, –3202 (1981 & 1987 Supp.); and unauthorized use of a vehicle, D.C.Code § 22–3815 (1987 Supp.). He was tried before a jury and found guilty on all counts. Appellant asks this court to overturn his convictions on the ground that the trial court erred in admitting evidence regarding a prior crime of which he had been convicted. We agree, reverse, and remand for a new trial.

**I.**

At trial, the court admitted evidence regarding appellant's prior crime as tending to establish his identity as the perpetrator of the crimes charged, based on the similarities between those crimes and the prior crime. Thus, it is necessary to discuss the facts of both incidents in some detail.

We turn first to the facts of the case now before us. On June 21, 1983, at approximately 7:00 p.m., Raymond Martin, a parttime driver for the Diamond Cab Association, was dispatched to pick up a fare at the Adams Printing Company in the 1200 block of K Street, N.W. When he arrived, a man whom Martin later identified in court as appellant approached the cab, said that he had called for it, got into the back seat, and asked to be driven to the 700 block of

Delaware Avenue, S.W. As the journey proceeded, the passenger engaged in some general conversation with Martin, indicating that he had just gotten off work at the printing company and discussing some chemicals used in the printing process.

When they arrived at the requested destination, appellant stated that he did not have any money but that he could get some from his sister in an apartment nearby. He then went into the apartment building, and then returned a few minutes later to say that his sister was not at home and that he needed to return to near the place where he had been picked up in order to get a key.

When the cab reached the 1200 block of Twelfth Street, N.W., appellant asked Martin to stop. A man standing in front of a building approached the cab and entered its right front seat. Appellant then told Martin to return to Southwest.

When they arrived again at Delaware Avenue, appellant leaned forward, put a knife to Martin's throat, directed him into the parking lot of a church, and ordered him to hand over his money. Martin gave appellant less than twenty-five dollars. Appellant and the other passenger accused Martin of lying about the amount of money he had and proceeded to ransack the cab, searching for more.

The passengers ordered Martin out of the cab, holding him at knifepoint while they searched the trunk. Still unable to find anything, they threatened to "finish him off." They then forced Martin into the back seat of the cab, where appellant continued to hold a knife against his rib cage. The second passenger took the wheel of the cab and proceeded to drive in a meandering course through Southwest, all the while continuing to threaten Martin that they would "finish him off."

Finally, about one hour after the ordeal began, the attackers pulled the cab into an alley on Thirteenth Street just south of Logan Circle, N.W. The two men wiped unspecified portions of the cab with a rag and fled on foot, leaving Martin behind. Martin called the cab dispatcher, reported the robbery, and asked that the police be summoned.

The police arrived within five minutes, took a report, and dusted the cab for fingerprints. Two of the fingerprints, one lifted from the right rear door and the other from a book inside the cab, later were matched with those of appellant and formed the basis for his arrest warrant.

Prior to trial, the trial court conducted a hearing regarding the government's intention to offer evidence of a 1981 robbery of which appellant had been convicted, for the purpose of establishing appellant's identity as Martin's robber. The government argued that the circumstances of the prior crime were so similar to the instant crime that there was a "reasonable probability that the same person committed both crimes," and thus that the evidence was admissible under the "identity exception" set forth in *Drew v. United States*, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964). The court ruled that the testimony could be admitted.

Pursuant to the court's ruling, the government adduced the testimony of Thurston Plummer, a part-time driver for the Imperial Cab Company. Plummer stated that between 7:00 and 8:00 p.m. on February 10, 1981, appellant approached him at a cab stand at the Flagship Restaurant in Southwest Washington. At first, Plummer told appellant that the cab was not available. After appellant told Plummer that he worked at the Flagship and had difficulty getting a cab there, however, Plummer agreed to take appellant to the 700 block of I Street, N.E. During the ride, appellant and Plummer conversed about appellant's family. Appellant asked Plummer if cab drivers were permitted to carry guns, to which Plummer replied that he did not carry one.

When they arrived at appellant's destination, appellant reached in his back pocket and said that he must have left his wallet at work. He pointed to a nearby house, saying that he lived there and would go in and get the money for the fare.

Suddenly, appellant put a sharp instrument to Plummer's throat and said "Okay,

Pop, give it up." Appellant reached into Plummer's shirt pocket and jacket pocket and took a few dollar bills and some change. He then told Plummer to leave as soon as he (appellant) exited the cab or he would "blow him away" with a German Luger. Appellant left the cab, and Plummer drove to a police station.

At the conclusion of trial, the jury returned a verdict of guilty on all counts.

## II.

■ It is well established that evidence of one crime is generally inadmissible to prove the defendant's disposition to commit another crime or to show the defendant's bad character, criminal temperament, or propensity toward criminal behavior. *See Artis v. United States*, 505 A.2d 52, 56 (D.C.), *cert. denied*, —— U.S. ——, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986) and cases cited therein; E. CLEARY, MCCORMICK ON EVIDENCE § 190 (3d ed. 1984); 1A J. WIGMORE, EVIDENCE § 57 (Tillers rev. 1983).

Exceptions to the general rule of inadmissibility, however, have been allowed when the evidence is admitted for some substantial, legitimate purpose. Five major exceptions have been recognized in this jurisdiction:

(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and; (5) the identity of the person charged with the commission of the crime on trial.

*Drew, supra*, 118 U.S.App.D.C. at 16, 331 F.2d at 90.

■ Although evidence may come in under one or more of these exceptions, the claimed exception must, of course, bear upon a contested issue. Furthermore, because there is substantial risk that the evidence will unfairly prejudice the defendant, there must be a "reasonable need for the evidence" and it must promise "a real contribution in the process of proof." *Bittle v. United States*, 410 A.2d 1383, 1387 (D.C. 1980) (per curiam) (quoting *Bradley v. United States*, 140 U.S.App.D.C. 7, 13, 433

F.2d 1113, 1119 (1969)). As we stated in *Willcher v. United States*, 408 A.2d 67 (D.C.1979):

To assess the probativeness and relevance of a prior incident, two threshold determinations must be made: (1) was an issue raised on which other crimes evidence could be received; and (2) was the proffered evidence relevant to that issue. Whether an issue has been raised for purposes of receiving other crimes evidence depends upon both the elements of the offense charged and the defense presented.

*Id.* at 75. It is also necessary that the trial court take prophylactic measures to ensure that the jury does not confuse the two incidents. *See Gates v. United States*, 481 A.2d 120, 124 (D.C.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985).

It is obvious that the evidence here was offered to prove a contested issue. The identity of Martin's attacker was the only issue in controversy, and evidence that tended to prove that identity was unquestionably material and relevant. Furthermore, to the extent that the evidence was probative of that issue, we are satisfied that there was a reasonable need for it. Even though the presence of appellant's fingerprints on the taxi door and on a book inside the taxi was strong evidence of appellant's guilt, its force was diminished somewhat by the fact that there was no evidence of when the prints had been placed there. Moreover, in the circumstances of this case, other evidence of appellant's guilt did not undermine the government's need for the evidence in question, since the government bore the burden of proving guilt beyond a reasonable doubt.

Likewise, we are satisfied that the trial court's prophylactic measures were sufficient to make it clear to the jury that the sole purpose of the evidence was to establish identity and not to allow it to infer a criminal disposition on the part of the defendant. The trial court admitted the evidence only after careful consideration following pretrial briefing and argument, and

instructed the jury about its limited use before opening statements, after testimony was presented, and in final jury instructions at the close of the trial.

### III.

However, it is on the critical issue of whether the relevance of the evidence to the question of identity was sufficient to render it admissible that we cannot agree with the government. Only

> if the facts surrounding the two or more crimes ... show that there is a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed, the evidence of one would be admissible in the trial of the other to prove identity.

*Drew, supra,* 118 U.S.App.D.C. at 16, 331 F.2d at 90 (footnote omitted). We have considered on several occasions the degree of similarity necessary to bring evidence within the identity exception. Rulings in this area tend to be highly specific to the facts of each particular case, but a consistent standard can be discerned from a review of the cases.

As we have seen, the standard set forth by the United States Court of Appeals for the District of Columbia Circuit in *Drew* was "a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinctive facts...." *Id.* In *Bridges v. United States,* 381 A.2d 1073 (D.C.1977), *cert. denied,* 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978), an appeal from a denial of a motion to sever, this court addressed the admissibility of prior crimes evidence in deciding whether evidence supporting each of the joined offenses would be mutually admissible. *Id.* at 1075. We described that test as requiring that the crimes be "so nearly identical in method that it is likely that the present offense has been committed by [the defendant]." *Id.* In that case, although there was "no one characteristic common to the four crimes which [was] so unique as to alone support the mutual admissibility of the evidence," we

noted that "[t]he test of mutual admissibility ... does not require that a *single* characteristic be so unique as to lead to the conclusion that all were committed by the same person." *Id.* at 1078 (emphasis in original). Quoting Dean Wigmore, we explained:

> Rarely can one circumstance alone be so inherently peculiar to a single object. It is by adding circumstance to circumstance that we obtain a composite feature or mark which as a whole cannot be supposed to be associated with more than a single object.
>
> The process of constructing an inference of Identity thus consists usually in adding together a number of circumstances, each of which by itself might be a feature of many objects, but all of which together make it more probable that they coexist in a single object only. Each additional circumstance reduces the chances of there being more than one object so associated. [2 WIGMORE ON EVIDENCE § 411 at 385–86 (3d ed. 1940)].

*Id.* To the same effect, we noted in *Gates, supra,* that "the admission of other crimes evidence need not depend on the presence of one distinctive similarity but the court can consider the *totality* of the factual circumstances which, amalgamated, lay a sufficient basis for admission under the *Drew* doctrine. 481 A.2d at 123 (emphasis added).

In *Brooks v. United States,* 448 A.2d 253 (D.C.1982), we rejected an argument that two rape charges should have been tried separately because we were satisfied that the circumstances of the two cases met the *Drew* requirement of a "reasonable probability that the same person committed both...." *Id.* at 257 (quoting *Drew, supra,* 118 U.S.App.D.C. at 16, 331 F.2d at 90). Indeed, we found a "strong likelihood" that the perpetrator of both crimes was the same because both incidents occurred at the same time of night in similar wooded park areas, involved young women walking alone, and were similar in duration, use of force, and other aspects of the *modus operandi. Id. See also Samuels v. United States,* 385 A.2d 16, 17–18 (D.C. 1978) (two robberies of taxi drivers by team

of two women were so similar and so proximate in time that participation in one robbery admissible to prove identity as participant in other).

Prior bad act evidence has been found inadmissible, however, when the combination of circumstances is not sufficiently distinctive that there is a "logical basis ... to assume that whoever did one [crime] did the other." *Settles v. United States*, 522 A.2d 348, 355 (D.C.1987) (insertion in original). For example, in *Drew, supra,* it was held that the combination of circumstances was not distinctive enough to provide an exception to the general rule of inadmissibility, when in both cases the offender was a black man wearing sunglasses, both victims were clerks in High's convenience stores, and both offenses occurred on summer afternoons when no customers were in the stores.[1] 118 U.S.App.D.C. at 18–19, 331 F.2d at 92–93.

Thus, the test we apply is to determine if there are enough points of similarity in the combination of circumstances surrounding the two crimes to create a reasonable probability that the same person committed each. When that test is met, in a case where identity is in issue and there is a reasonable need for the evidence, the evidence is admissible, subject to the trial judge's determination whether it is more probative than prejudicial.

### IV.

■ Turning to the instant appeal, the government contends that seven similarities in the fact patterns of the two offenses, taken in their entirety, provide sufficient common characteristics to meet the test for an identity exception to allow admission of the prior bad act evidence:

(a) Both victims were middle-aged cab drivers;

(b) In both cases, the robber initially approached the driver in an ingratiating manner;

(c) Both robbers claimed a connection with the place of business from which they were picked up;

(d) Both robbers were armed with sharp instruments;

(e) Both robbers used or threatened a substantial degree of force;

(f) Both crimes occurred at approximately the same time of day; and

(g) Both crimes involved a similar *modus operandi* in that the passenger indicated that he did not have the money for the fare upon arrival at his destination, and either pointed to or actually went toward a place in which he claimed to have an interest, before proceeding with the robbery.

There are also, however, several striking differences between the two offenses, for example:

(a) In the prior case, the cab was approached at a taxi stand; here, the taxi responded to a radio call;

(b) In the prior case, the victim was unsure about the weapon; here, the victim was specific that the robber used a knife;

(c) In the prior case, the robber threatened the driver with the use of a gun; here, no gun was involved;

(d) In the prior case, a single individual committed the offense; here, two persons were involved;

(e) In the prior case, the driver was initially robbed at the intended destination; here, the robber first directed the driver to return near the point of the taxi ride's origin, had the driver pick up a second

---

1. Two other examples of sets of circumstances that we found to lack distinctive similarity are found in *Evans v. United States*, 392 A.2d 1015 (D.C.1978), and *Tinsley v. United States*, 368 A.2d 531 (D.C.1976).

In *Evans,* we reversed the trial court's denial of severance of two offenses of burglary. 392 A.2d at 1017. Both crimes involved the night-time entry of an occupied dwelling place by two young black males who demanded money, expressed an interest in drugs, and threatened or physically assaulted their victims. In each case one of the intruders addressed the other by the nickname "Papa." *Id.* at 1020–21.

In *Tinsley,* we reversed a denial of severance where, in each of the joined cases, the defendant had been the last person to be seen with the victim, the defendant and the victims had been drinking together in the early hours of the morning of the homicides, and both victims suffered similar injuries and had died from strangulation. 368 A.2d at 535–36.

person, robbed the driver at a second stop at the initial destination, and held him at knifepoint for a half hour before releasing him;

(f) In the prior case, the assailant fled after obtaining only a small amount of cash; here, the assailants claimed not to believe that the driver was carrying only a few dollars, and proceeded to ransack the cab, and to terrorize and threaten the driver.

We conclude that the combinations of circumstances surrounding the respective crimes do not create a reasonable probability that the same person committed both offenses. Several of the circumstances cited by the government are, unfortunately, sufficiently commonplace that they add little weight to the government's argument. Robberies of middle-aged cab drivers during evening hours, for example, are not especially unusual occurrences, nor is the use of a sharp instrument in such a robbery. The other points of similarity, including the ruse of not having money for the fare, do not add enough for us to conclude otherwise when we consider the differences between the two occurrences. One basic difference is that the earlier offense was committed by appellant alone, whereas two persons perpetrated the instant offense. Especially significant also, in our view, are the markedly different courses of events that followed the assailant's announcement in the respective incidents that he lacked the fare. In the earlier occurrence, appellant threatened the driver, took a small amount of money, and immediately left the scene; in the case before us, the assailant and his accomplice violently ransacked the cab when dissatisfied with the meager proceeds of the robbery, kidnapped the driver, held him at knifepoint, and continually threatened his life while commandeering the taxi for a half hour. Weighing both the similarities and the differences between the two sets of circumstances, we hold that the trial court erred in admitting the evidence.

We do not find the error harmless. Under the test set forth in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), we must consider wheth-er we are satisfied "after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error...." *Id.* at 765, 66 S.Ct. at 1248. It is not only our own analysis of the record that leads us to conclude that the erroneously admitted evidence was a substantial part of the government's case; the government argued successfully in the pretrial proceedings that without the evidence in question, "there is no certain identification to tie the defendant to the ... June robbery." Reversal is required.

*Reversed and remanded for a new trial consistent with this opinion.*