Samuel WRIGHT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 86–1077.

District of Columbia Court of Appeals.

Argued Oct. 5, 1989.
Decided Feb. 16, 1990.

Ronald A. Goodbread, Washington, D.C., for appellant. Frances M. D'Antuono, appointed by this court, was on the brief, for appellant.

Thomas C. Black, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., at the time the brief was filed, and Thomas J. Tourish, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and NEWMAN and FERREN, Associate Judges.

ROGERS, Chief Judge:

Appellant Samuel Wright seeks reversal of his convictions by a jury [1] in connection with two burglaries of the Video Place store on the principal ground that the trial judge abused his discretion in denying appellant's motion to sever the December 1984 and the January 1985 burglaries. He also contends that his convictions must be reversed because the government was allowed to present evidence concerning the absent codefendant's whereabouts during the two burglaries, and there was insufficient evidence of the crime of burglary since the government failed to prove that property taken belonged to someone else and was appellant's property. Finding appellant's principal claim of error persuasive, we reverse.

## I

The first burglary of Video Place, located at 1910 K Street, N.W., occurred between 7:30 p.m. on December 24, 1984 and December 26, 1984, when it was discovered by store employees. The store manager testified that the glass container holding the video tapes was smashed and the alarm siren was ripped from the ceiling. Ceiling tiles were destroyed where the alarm hung and near the office, which had been entered by going through the ceiling over the locked door. The manager discovered that $2,448.61 of the store's receipts were missing. The police recovered a total of seven fingerprints, including a latent thumbprint from a piece of glass found on the sales counter about a foot from the broken glass display case, which was kept locked.

The second burglary of the Video Place occurred on Sunday, January 20, 1985, Super Bowl Sunday. The police responded to a burglar alarm for 1910 K Street, N.W., and while searching the building for possible intruders, discovered that the mezzanine-level door in the rear of the building had been smashed. Tools were found lying nearby, and footprints in the snow led through the broken door into the building. Two men were seen leaning over the railing above the ground floor stairwell in the rear of the building. The men fled up the steps after a uniform police officer identified himself and ordered the men to halt. Another officer radioed that the elevator was descending to the lower level. When the elevator door opened, a police officer heard one of the men say "It's okay," and, with his gun drawn, ordered appellant and Goode out of the elevator; the officer blocked appellant's attempt to close the elevator door. The men were recognized as the two seen in the stairwell.

The only business burglarized inside 1910 K Street, N.W., on January 20, 1985, was the Video Place, located on the mezzanine level. Burglars entered the store by crawling through the ceiling from the hallway at the back of the store. Ceiling tiles were scattered in the hallway and inside the back door, and the store had been ransacked, leaving the front counter in disarray, and the fire alarm had been disabled. Missing from the manager's office, which had been entered by climbing through the ceiling from the store's showroom over the locked door, was some loose change that was left in a drawer. A fingerprint expert testified that one of the latent prints found in the Video Place after the December burglary matched the fingerprint taken from appellant after his January 20, 1985 arrest.

In defense, appellant introduced records from a halfway house that showed he was a resident of the Community Correctional Center Number 2, located at 1825 13th Street, N.W. in December of 1984. The records reflected that on December 24, 1984, he had left at 12:10 p.m., returned at 12:29 p.m., and signed out again at 5:00 p.m., indicating he was going to 605 8th Street, S.E. Three witnesses testified that appellant had visited their homes between 5:30 p.m. and 11:00 p.m. on December 24, 1984.[2] The halfway house records showed

---

**1.** Appellant was convicted of two counts of burglary in the second degree, D.C. Code § 22–1801(b) (1981), three counts of destruction of property, *id.* § 22–403, and one count each of theft in the first and second degree, *id.* § 22–3811.

**2.** Greg Phillips, who lived at 1000 G Street, N.E., testified that appellant came to his house by

that on December 25 he left for 605 8th Street, S.E., at 8:45 a.m. and returned at 10:37 p.m.,[3] and that on December 26 he left the Center between 6:00 a.m. and 6:16 a.m., 12:15 p.m. and 1:10 p.m., and between 3:00 p.m. and 4:00 p.m.

## II

■ Appellant contends that the trial judge abused his discretion in denying his pretrial motion under Super.Ct.Crim.R. 14 to sever the trials of the December 1984 and January 1985 Video Place burglaries. Specifically, he contends the trial judge erred in ruling that the burglaries were mutually admissible.[4] Citing *Bridges v. United States*, 381 A.2d 1073, 1075 (D.C. 1977), *cert. denied*, 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978), he maintains that there was nothing particularly distinctive or unusual about the modus operandi of the burglaries as would constitute a "trademark" of the perpetrator, *id.* at 1075, such that "there is a reasonable probability that the same person committed both offenses." *Drew v. United States*, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964). Noting that the method of entry in January 1985 was different because bars had been placed on the window used to enter in December 1984, appellant maintains that there is "[n]othing about these two offenses that invests them with any particularly distinctive 'modus operandi' identifying them as 'signature crimes' or linking them with any discrete common character" (citing *Evans v. United States*, 392 A.2d 1015 (D.C.1978)).

We agree with appellant that the evidence showed only that entry was gained through one of several means during predictable periods of inactivity and the manner of commission of the burglaries was dictated as much by the structural features of the store as by any preordained scheme by the perpetrators. Further, as he argues, the fact that the perpetrators tried to kick in the door in the first incident and did not do so in the second neither compels nor makes probable the inference that entry over the ceiling in the January incident occurred as a result of knowledge gained from the December burglary, as the government argued at trial, since any burglar lacking a tool to pry open the door would be confronted with the same dilemma. Likewise, we agree with appellant that any burglar would have likely pulled out the visible alarm siren and have disabled the equally visible office alarm box. Finally, the aspects of the burglaries that might have provided support for the trial judge's view that they were mutually admissible is lacking since the evidence did not show that the ransacking was more than that necessary to expose money or valuables.[5]

The applicable legal principles are well established. Generally, evidence of one crime is inadmissible to prove the defendant's disposition to commit another crime or to show the defendant's bad character, criminal temperament or propensity toward criminal behavior. *Easton v. United States*, 533 A.2d 904, 906 (D.C.1987) (citing *Artis v. United States*, 505 A.2d 52, 56 (D.C.), *cert. denied*, 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986)). A court will allow exceptions to the general rule, how-

---

himself about 5:30 p.m. on December 24, 1984 and stayed to between 7:00 and 7:30 p.m. Margaret Phillips also testified that she saw appellant when he arrived at 1000 G Street, N.E., about one or two hours after dark on December 24, 1984. Deborah Wright, of 1144 Oates Street, N.E., testified that appellant came to her home, by himself, between 9:30 and 10:30 p.m. on December 24, 1984 and left between 10:45 and 11:00 p.m.

3. Nancy Bush, who lived at 1008 4th Street, N.E., testified that appellant showed up alone at her house about 9:00 a.m. on Christmas Day and left about 1:00 p.m. Greg Phillips testified that

appellant returned to his house at 1000 G Street, N.E., about 12:00 p.m. Christmas afternoon and stayed there all day, becoming inebriated after a day of drinking and not leaving Phillip's residence until about 10:00 p.m.

4. The court instructed the jury that evidence from the second burglary was admissible on the issue of identity in the first burglary and evidence from the first burglary was admissible to show appellant's motive and intent in the second burglary.

5. Appellant did not appeal from the denial of his motion under Super.Ct.Crim.R. 8.

ever, when the evidence is offered for some legitimate and substantial purpose. *Easton, supra,* 533 A.2d at 906.[6] Nonetheless, when offenses "of the same or similar character" are properly joined under Super.Ct.Crim.R. 8(a), there exists a "substantial risk of prejudice" to the defendant, *Cox v. United States,* 498 A.2d 231, 235 (D.C.1985) (quoting *Bridges v. United States, supra,* 381 A.2d at 1075) because the jury might cumulate the evidence of the various crimes, infer a criminal disposition of the defendant, or become hostile to a defendant charged with multiple crimes. *Crisafi v. United States,* 383 A.2d 1, 3 n. 2 (D.C.), *cert. denied,* 439 U.S. 931, 99 S.Ct. 322, 58 L.Ed.2d 326 (1978). Therefore, severance under Super.Ct.Crim.R. 14 should be granted for offenses of "similar character" unless "(1) the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass,[7] or (2) the evidence of each of the joined crimes would be admissible at the separate trial of the others." *Bridges, supra,* 381 A.2d at 1075; *Tinsley v. United States,* 368 A.2d 531 (D.C.1976); *Drew, supra,* 118 U.S.App. D.C. at 11, 331 F.2d at 85.

Although "rulings in this area tend to be highly specific to the facts of each particular case, ... a consistent standard can be discerned from a review of the cases." *Easton, supra,* 533 A.2d at 907; *Drew, supra,* 118 U.S.App.D.C. at 16, 331 F.2d at 90; *Brooks v. United States,* 448 A.2d 253, 257 (D.C.1982). This Court requires that the crimes be "so nearly identical in method that it is likely that the present offense has been committed by the defendant." *Easton, supra,* 533 A.2d at 907 (quoting *Bridges, supra,* 381 A.2d at 1075). We also have explained that the test of mutual admissibility "does not require that a *single* characteristic be so unique as to lead to the conclusion that both crimes were committed by the same person." *Bridges, supra,* 381 A.2d at 1078 (emphasis in original). *See Goins v. United States,* 353 A.2d 298 (1976). If one distinctive similarity is not present among the evidence, "the court can consider the totality of the factual circumstances which amalgamated, lay a sufficient basis for admission under the *Drew* doctrine." *Gates v. United States,* 481 A.2d 120, 123 (D.C. 1984); *see Bartley v. United States,* 530 A.2d 692 (D.C.1987). This is not to say, however, that incidents whose similarities arise from circumstances inherent in the nature of the premises involved are therefore mutually admissible; to do so would eviscerate the *Drew* exception. The test we apply in reviewing the trial court's ruling is whether "there are enough points of similarity in the combination of circumstances surrounding the two crimes to create a reasonable probability that the same person committed each." *Easton, supra,* 533 A.2d at 908.[8]

The trial judge ruled that the similarities in offenses were not distinctive and unusual so as to constitute a signature crime, *see Bridges, supra,* 381 A.2d at 1075, but upon considering the totality of the factual circumstances, admitted the evidence of the two burglaries as relevant to motive, intent and identification, noting that *Bradley v. United States,* 140 U.S.App.D.C. 7, 13, 433 F.2d 1113, 1119 (1969), "is pretty much

6. At least five major exceptions have been recognized in this jurisdiction: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other; and (5) the identity of the person charged with the commission of the crime on trial. *Drew, supra,* 118 U.S.App.D.C. at 11, 331 F.2d at 85.

7. The trial judge instructed the jury that it could consider evidence relating to either incident on the other. Hence the "separate and distinct analysis" is inapplicable.

8. To prevail appellant must demonstrate that the trial judge abused his discretion, *Cox v. United States,* 498 A.2d 231, 235 (D.C.1985); *Brooks v. United States,* 448 A.2d 253, 257 (D.C. 1982); *Arnold v. United States,* 358 A.2d 335, 339 (D.C.1976) (en banc), by showing that he suffered compelling prejudice from the joinder of offenses which the trial judge is unable to prevent. *Winestock v. United States,* 429 A.2d 519, 527 (D.C.1981). It is not enough to show that he would have a better chance of acquittal if the charges were tried separately. *Id.* at 527; *United States v. Lord,* 565 F.2d 831, 839 (2d Cir. 1977).

dispositive in this case." The similarities between the December 1984 burglary and the January 20, 1985 burglaries arise from the facts that the same business ("Video Place") located at 1910 K Street N.W. was burglarized within one month during periods when it was highly unlikely that anyone would be working in the building,[9] and the burglaries were accomplished by disabling the burglar alarm, ripping the siren out of the ceiling and pulling the wires from the alarm box, by entering the store's office by crawling over the door through the ceiling, and the burglaries involved the theft of money from the office cash register drawer and video tapes and personal stereos from the display cabinets. But there also are crucial differences between the two burglaries.

In January 1985, entry was gained by smashing in the rear first floor door, and the burglars did not try to kick in the door to the manager's office as had the burglars in December. While, as the government urges, minor differences between the December and January burglaries are to be expected, particularly in view of the fact that bars were placed on the entry window after the December burglary, reliance on a totality-of-circumstances analysis is not the same as finding mutual admissibility because the burglaries occurred at the same business within one month of each other on a day when no one was likely to be around.

■ Although our cases have not precisely defined when the totality of circumstances rises to the level required for mutual admissibility, the totality standard goes no further than *Bartley, supra,* 530 A.2d at 695–96. *Easton* states the test that must be applied: a modus operandi that is not unique does not provide a basis for mutual admissibility. 533 A.2d at 908; *see id.* at 907. *See Evans, supra,* 392 A.2d at 1021.

The fact that a video store was burglarized twice in a thirty-day period is hardly surprising given the nature of its readily marketable merchandise. *See Easton, supra,* 533 A.2d at 909 (robberies of middle aged cab drivers during evening not especially unique circumstances; nor is use of sharp instrument during a robbery). Hence, the length of time between the two burglaries is not distinctive. The periods during which the burglaries occurred also were not unique but were logical times during which the commercial premises would be empty. *See Drew, supra,* 118 U.S.App.D.C. at 18–19, 331 F.2d at 92–93. While the burglars demonstrated similar techniques of entry by removal of ceiling tiles in the December and January incidents, these circumstances were properly not relied on by the trial judge since entry techniques were predetermined by the construction of the building. That bars were installed on the window the burglars had used to gain entrance during the December 1984 burglary, thus forcing the burglars on January 20, 1985, to smash the first floor rear door of the office building, is little evidence that the same individuals committed both burglaries or that the smashing of the door in January resulted from knowledge gained in the December burglary; any burglar would have had to do the same thing. The burglar system installed at the Video Place was common to many of the stores and offices located in the downtown Washington, D.C. area and many office buildings use lightweight suspended ceilings. The trial judge correctly declined to rely on the evidence regarding the ceiling tiles and burglar alarm as circumstances weighing in favor of mutual admissibility.[10]

Thus, the offenses were not mutually admissible. Moreover, we conclude that appellant has met his burden to show that he was severely prejudiced. *See Winestock, supra* note 8, 429 A.2d at 527. The only evidence linking him to the December

---

9. The first burglary occurred during the Christmas holidays while the Video Place was closed, from 7:30 p.m. December 24 to the morning of December 26. The second burglary occurred on January 20 which was Super Bowl Sunday.

10. That a television was taken on January 20, along with the video tapes and personal stereos, is a distinction of little, if any, consequence since a television, like video tapes and personal stereos, is the type of electronic equipment that can be readily fenced.

burglary was a thumbprint from a part of the backside of a display case. The crime scene officer testified that he could not determine the portion of the backside of the case from which the print had come, and admitted that the print might have been there for as long as a week before it was discovered. There was evidence that it was very easy to reach over the case and touch the back of it. Since the evidence of the January burglary undermined appellant's alibi defense to the December burglary, the error is not harmless. *See Kotteakos v. United States*, 328 U.S. 750, 756, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946).

Further, the thumbprint from the first burglary was erroneously admitted to show motive and intent in the second burglary because these issues were not contested. *See Thompson v. United States*, 546 A.2d 414, 422–23 (D.C.1988). The motive or intent of whoever broke into the Video Place store and stacked up the merchandise in January 1985 was undisputed; whoever broke in wanted to steal the merchandise. The contested issue was whether appellant broke into the store. Therefore, in view of the judge's erroneous instruction to the jury that it could consider the December evidence with respect to motive for the January burglary, we cannot hold, as the government urges, relying on *Settles v. United States*, 522 A.2d 348, 354 (D.C.1987), that only appellant's conviction of the December burglary need be reversed. Proper use of the fingerprint evidence at the trial of the January burglary would have been confined to proof of identity.[11] *See Light v. United States*, 360 A.2d 479, 480 (D.C.1976) (clear and convinc-

ing evidence of identity); *Ali v. United States*, 520 A.2d 306, 310 (D.C.1987). In addition, there is a serious question whether the probative value of the evidence of appellant's thumbprint, which was found after the December burglary on a piece of broken display glass that was accessible to the public, would outweigh the prejudice to appellant. *See Bradley, supra,* 140 U.S. App.D.C. at 13, 433 F.2d at 1119. (In borderline cases where real question is whether the relevance of the other crimes evidence is outweighed by its undue prejudice, the other-offense evidence relating to identity must promise a real contribution in the process of identity).[12] *See Easton, supra,* 533 A.2d at 906; *Bridges, supra,* 381 A.2d at 1075; *see also Byrd v. United States,* 551 A.2d 96, 100–101 (D.C.1988).

### III

Appellant also contends that the trial judge erred in allowing the government to present evidence concerning the movements of the absent co-defendant, Walter Goode, in the January burglary through the halfway house records introduced by appellant. He maintains this contravened *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because it constituted "statements of an absent co-defendant used as evidence against" appellant when the codefendant was "unavailable" to the defense. This contention is meritless. The mere fact that Goode "signed" in and out of the halfway house does not make the halfway house records statements of an absent co-defendant. Appellant concedes that the halfway house records were admissible under the business

---

11. While the court in *Bradley* stated that evidence of the July 4 breaking could properly have been admitted in a separate trial of the July 13 charge on the issues of motive and intent, the defendant conceded the point on appeal and the issue was not before the court. 140 U.S.App.D.C. at 13, 433 F.2d at 1119.

12. In *Bradley*, there were detailed descriptions of the perpetrators at the time of both housebreakings. The court referred to such evidence as providing "a real contribution in the process of proof of identity;" "a plus quality" type of identification evidence. 140 U.S.App.D.C. at 13–14, 433 F.2d at 1119–20. The court concluded

that a jury could logically find that the several similarities inhering in the two entries into the apartment connoted much more than pure coincidence. For the same reason in a separate trial of the earlier housebreaking, the judge could properly allow the government to prove Bradley's presence in the apartment on the date of the later housebreaking and the circumstances common to both intrusions in corroboration to [the victim's] identification of [Bradley] as earlier housebreaker and Officer Hardy's identification of him as the man at the bus stop and as the George Bradley who is our [Bradley]. *Id.* at 25, 433 F.2d at 1121.

records exception to the hearsay rule.[13] While these records are therefore admissible in any subsequent trial on the December burglary, our ruling on the question of mutual admissibility means that the government may not use any evidence of the January burglary (*i.e.*, that appellant and Goode were arrested together) in arguing that the halfway house records rebut appellant's alibi.

## IV

Finally, appellant contends that the government failed to prove that any of the property taken or destroyed was the "property of another." This claim is also meritless. *Carmon v. United States*, 498 A.2d 580, 582 (D.C.1985); *see Baldwin v. United States*, 521 A.2d 650 (D.C.1987); *Alston v. United States*, 509 A.2d 1129, 1130 (D.C. 1986). The testimony of the general manager of the Video Place fulfilled this obligation of proof. Similarly, we find no merit to appellant's argument that the government failed to prove the personal property destroyed during the two burglaries was "not his own." *Gurley v. United States*, 308 A.2d 785 (D.C.1973). His reliance on *Atkinson v. United States*, 322 A.2d 587 (D.C.1974), is misplaced since that case did not hold that specific proof of corporate ownership is required, such as character, certificate of incorporation, and the license to do business, but only that there must be some proof of corporate existence. *Id.* at 589–90 (citing *Nelson v. United States*, 142 A.2d 604, 605 (D.C.1974)).

*Reversed and Remanded.*

---

13. Mr. Cobb authenticated the halfway house records relating to the movements of the residents. Also, there was sufficient testimony which certified as accurate the times when Mr. Goode left and returned to the halfway house.