**Terry COLEMAN a/k/a John Wingate, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 88–CF–888.**

District of Columbia Court of Appeals.

Argued April 18, 1991.
Decided Jan. 12, 1993.

Julia Leighton, Public Defender Service, with whom James Klein and Page Kennedy, Public Defender Service, were on the brief, for appellant.

Robert Spagnoletti, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, and Thomas C. Black, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, SCHWELB and WAGNER, Associate Judges.

WAGNER, Associate Judge:

Appellant was convicted following a jury trial of three counts of armed robbery (D.C.Code §§ 22–2901, –3209 (1981)),[1] four counts of second degree burglary (D.C.Code § 22–1801(b)), one count of robbery (D.C.Code § 22–2901), one count of kidnapping, (D.C.Code § 22–2101), one count of first degree burglary (D.C.Code § 22–1801(a)), one count of first degree theft (D.C.Code §§ 22–3811, –3812(a)), one count of unauthorized use of a motor vehicle (UUV), (D.C.Code § 22–3815) and one count of carrying a dangerous weapon (CDW) (D.C.Code § 22–3204). The convictions arise out of four separate incidents and circumstances surrounding appellant's subsequent arrest during which police officers found a knife in his pocket. On appeal, appellant argues that the trial court erred in denying his motions to sever counts and to suppress tangible evidence. Appellant also argues that the CDW count was improperly joined with the remaining charges. Finding no reversible error, we affirm.

I.

A.  The Simplicio Incident

The first incident occurred on June 2, 1987 at about 6:40 p.m. in the 2700 block of Ordway Street, N.W. The victim, Nancy Simplicio, noticed a man on a bicycle next to the garage door of her apartment building as she waited for traffic to clear before entering. She activated the secured underground garage door and drove in, noticing that the man on the bike was still near the door. After parking, Ms. Simplicio, who was carrying several packages, used a key to enter a secured elevator area, and the same man entered after her just before the door closed. The man yoked her from behind, put a knife to her throat, and demanded her purse. When the elevator came, the man grabbed the purse, shoved his victim inside the elevator, and went on his way. Ms. Simplicio described her assailant as an approximately 20 year old muscular black male, about 200 pounds with a medium brown complexion, a short neat haircut, deep set shifting eyes, who was wearing a red shirt and blue trousers. At a pretrial

---

1. One robbery count involved a senior citizen for which additional penalties may be imposed under D.C.Code § 22–3901 (1988 Repl.). Unless otherwise indicated, all references to the D.C.Code are to the 1988 edition.

lineup and at trial, Ms. Simplicio positively identified appellant as her assailant.

### B. The Grudzinski Incident

The same night at about 9:00 p.m., Estella Grudzinski, a seventy-five year old woman, noticed a man crouched next to a bicycle near the secured garage of her apartment building at 29th Street near Woodley Road, N.W. She used her key to gain access to the garage, parked her car once inside, and walked to a door leading to the apartments. The man grabbed her from behind, put his arm around her neck, placed a sharp object in her back, told her he had a knife and would use it, and demanded $200.00. When the victim said she had only two or three dollars (which the man took), the assailant asked if she lived in the building. She answered affirmatively, and the man demanded that she unlock the door leading to the apartments. Ms. Grudzinski complied, and the assailant accompanied his victim to her apartment where she opened the door, threw her keys in a chair, and obtained money for the robber from a chest inside a dressing room. After taking the money, the man barricaded Ms. Grudzinski inside a clothes closet.[2] When the victim escaped from the closet, she discovered that her car keys and car were missing.

Ms. Grudzinski had avoided looking at her assailant's face during the encounter, but she did note that he was a black male, about 6 feet 2 inches tall, with closely cropped hair (like the figure outside the garage), and wearing a maroon shirt. Having gotten only a glimpse of her assailant, Ms. Grudzinski could not identify him. However, appellant's palm prints were found on the closet door in Ms. Grudzinski's apartment.

### C. The McCullough Incident

At about 1:45 a.m. the following morning, June 3, 1987, Karris McCullough, arrived home in a taxicab carrying groceries. As she was about to enter her apartment building in the 2700 block of 29th Street, N.W., a man got out of a car, later identified as the one stolen from Ms. Grudzinski, and approached her. Somewhat alarmed, the woman yelled out to the man, asking whether she could help him. The man glanced over his shoulder and started fumbling with keys; then he continued toward his victim. Thinking that the man might be a resident of the building, Ms. McCullough started to go inside. The man grabbed two of Ms. McCullough's four grocery bags and entered the building as she did. She declined the man's offer to take the bags to her apartment. The man started toward the elevator, and the victim turned toward her apartment. Hearing quick movements behind her, Ms. McCullough turned and saw the same man approaching her with a knife. She backed against a wall, and the assailant put the knife next to her throat and demanded money. Ms. McCullough gave him $7.00 in cash from her pocket, but the man demanded her purse from which he obtained an additional forty-two dollars. Although she is not married, in an effort to discourage her attacker, Ms. McCullough told him her husband might have more money. The man left immediately.

The area where the crime occurred was well lit, and Ms. McCullough got a good look at her assailant. She described him as having a medium brown complexion, pock marked face, short curly hair, beady or demon looking eyes and wearing a red bowler shirt (short sleeved with a collar) and dark pants. Ms. McCullough identified appellant as her assailant from a photo array, again at a pretrial lineup, and at trial.

### D. The Mansur Incident

The fourth incident also occurred in the 2700 block of 29th Street, N.W. on the following night, June 4, 1987, at about 11:00 p.m. While driving into the garage of the apartment building where she lived, Ms. Ghada Mansur noticed a man on a bicycle heading toward the garage. After she gained access to the garage by use of a

---

**2.** Appellant was indicted for assault with intent to commit rape while armed (D.C.Code §§ 22–501, –3202) in connection with this incident; however, that count was severed from the remaining counts for trial.

key, she entered and parked her auto. When she got out of her vehicle, she noticed the same man entering the garage on foot. At first the man walked in another direction, but he suddenly approached Ms. Mansur with a knife, backed her against the wall, grabbed her purse, and told her to open it. Excitedly, Ms. Mansur told him that she had lots of money, and she handed him approximately two hundred eighty dollars. The assailant hesitated momentarily, looked at his victim and the cash, and then left. The man had difficulty trying to exit the garage, and Ms. Mansur returned quickly to her car, drove to the front of the building and honked her horn until the attendant came out. Ms. Mansur described her assailant as a clean-cut black male, about 29 or 30 years old, 6 feet tall, with tight curly hair, shifty eyes, a "pot" marked face, and wearing a red waist length jacket and blue jeans. Ms. Mansur positively identified appellant as her assailant in a lineup and again at trial.

### E. Appellant's Arrest

The following night, June 5, 1987, at about 11:20 p.m. appellant was arrested for carrying a dangerous weapon. Responding to a radio run, a police officer saw appellant wearing a red waist length jacket and standing in an alley, next to a bicycle, looking toward the rear windows of an apartment building in the 3000 block of Connecticut Avenue, N.W., the same vicinity of the four robberies.[3] The officer testified that appellant matched descriptions given by recent robbery victims, including clothing details and the bicycle. The officer stopped appellant and found a knife in his rear pocket during a patdown. The weapon recovered forms the basis of the charge of carrying a dangerous weapon. The arresting officer identified the knife at

trial as the one recovered from appellant. Two of the victims, Ms. Simplicio and Ms. McCullough, testified that the knife could have been the one used in their respective robberies. Appellant's aunt positively identified the knife as one belonging to appellant.

### II.

First, appellant argues that the trial court erred in denying his motion for severance of offenses because: (1) the evidence was not kept separate and distinct; and (2) the evidence of the various crimes was not mutually admissible under the common scheme or plan or the identity exception. We find no error in the trial court's denial of the severance motion. With the exception of the CDW offense, which we discuss separately, appellant does not contend that the remaining charges were improperly joined under Super.Ct.Crim.R. 8(a).[4] When such offenses are joined for trial under the Rule, "there is a substantial risk of prejudice." *Evans v. United States*, 392 A.2d 1015, 1020 (D.C. 1978). The obvious danger identified in a long line of cases is that the jury might conclude that one accused of multiple crimes must be guilty of something and "cumulate the evidence against him." *Bridges v. United States*, 381 A.2d 1073, 1075 (D.C.1977), *cert. denied*, 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978). There is also the danger that the jury might return a conviction based on proof of the other offenses, even though the evidence might otherwise be insufficient on a joined offense. *Id.* Therefore, a motion for severance must be granted "unless (1) the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass, or (2) the evidence of the

**3.** At the suppression hearing, the officer testified that he responded to a radio run for a second sighting of a suspect in a robbery, who was a black male, wearing a red jacket, with a bicycle. The report was later determined to be incorrect only in that the broadcast was not in relation to a second sighting, but rather to a call from a maintenance man who had sighted someone corresponding to the description of a suspected robber in the area.

**4.** The rule provides:

(a) *Joinder of offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

**44**

joined crimes would be admissible at the separate trial of the others." *Id.* (citing *Tinsley v. United States,* 368 A.2d 531 (D.C.1976); *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964)). Appellant argues that neither requirement was met, and therefore, his motion for severance under Super.Ct.Crim.R. 14 should have been granted.[5] We conclude that evidence of each of the joined crimes under discussion would have been admissible at separate trials. Therefore, we find no error in the trial court's ruling involving these charges.

Severance is not required where evidence relating to each of the joined offenses would have been admissible at separate trials of the other offenses. *Wright v. United States,* 570 A.2d 731, 734 (D.C. 1990). This "mutual admissibility" doctrine recognizes that when the rules of evidence would have allowed such evidence at a separate trial, joinder of the offenses in a single trial does not "unduly increase the likelihood that the jury will infer a criminal disposition." *Cox v. United States,* 498 A.2d 231, 237 (D.C.1985). In order for other crimes evidence to be admissible in a criminal trial, it must be relevant and important to the issues involved. *Id.* (quoting *Drew, supra,* 118 U.S.App. D.C. at 15–16, 331 F.2d at 89–90 (footnotes omitted); *Tinsley, supra,* 368 A.2d at 534). Other crimes evidence is admissible when relevant, *inter alia,* to identity or a "common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other." *Drew, supra,* 118 U.S.App.D.C. at 16, 331 F.2d at 90. In this case the trial court ruled that evidence of each of the offenses would be admissible at a separate trial to prove the identity of the perpetrator of the offenses and under the common scheme or plan exception. Because we agree that the evidence would

have been admissible under the identity exception, we do not reach the alternative ground upon which denial of the severance motion was based.

The government has the burden of proving beyond a reasonable doubt not only that a crime was committed, but that the accused committed the offense. Since the defense in this case was misidentification, identity was a material issue on which the evidence legitimately could be received. This threshold determination being unchallenged,[6] the question remaining is whether "the relevance of the evidence to the question of identity was sufficient to render it admissible" on that question. *See Easton v. United States,* 533 A.2d 904, 906–07 (D.C.1987).

Evidence of other criminal acts may be admitted under the identity exception when " 'there is a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed.' " *Cox, supra,* 498 A.2d at 238 (quoting *Drew, supra,* 118 U.S.App.D.C. at 16, 331 F.2d at 90). It is not necessary that the crimes be identical in every detail nor that they share any single unique characteristic. *Id.* There need only be enough points of similarity in the combination of circumstances to make it reasonably probable that the same person committed all of the offenses. *Byrd v. United States,* 551 A.2d 96, 100 (D.C.1988), *cert. denied,* 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); *Cox, supra,* 498 A.2d at 238.

We find more than sufficient the combination of circumstances surrounding the commission of the offenses in this case to support their mutual admissibility under the identity exception. The four incidences occurred within a two day period; the first

5. Super.Ct.Crim.R. 14 provides in pertinent part as follows:

 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the Court may order an election or separate trials

of counts, grant a severance of defendants or provide whatever other relief justice requires.

6. *See Willcher v. United States,* 408 A.2d 67, 75 (D.C.1979) (relevance assessment requires determination of whether there is an "issue raised on which other crimes evidence could be received").

three, within less than eight hours; and all four, at locations in close proximity to each other. *See Byrd, supra,* 551 A.2d at 100 (crimes occurring within 90 minutes, six blocks apart of particular significance on the identity issue). Each of the criminal events involved a man with a bicycle, except for the McCullough incident, where the perpetrator arrived in a vehicle taken in the Grudzinski robbery, less than five hours earlier.[7] In each of the four cases, the assailant accosted a lone female victim by gaining access to a secured area of an apartment building after the victim opened the door with a key or access card. The robber displayed a knife in three of the four robberies and threatened during the fourth incident that he had a knife. *See Cox, supra,* 498 A.2d at 238 (use of same weapon among factors considered significant in identity exception analysis). The physical and clothing descriptions of the attacker given by the victims were strikingly similar. *See Bowyer v. United States,* 422 A.2d 973, 977 (D.C.1980) (physical description, *i.e.,* complexion, a significant feature in identity exception review). There were other similarities in the assailant's modus operandi, including his manner of approaching with the knife, the manner of lying in wait outside the locked buildings (except in one instance when he emerged from the car after the victim arrived at her locked building), and entering the buildings to commit the offenses. *See Bartley v. United States,* 530 A.2d 692, 696 (D.C. 1987). It is the combination of these circumstances which provides compelling evidence that the same man robbed all four victims. When identity is in issue, as it is in this case, and there is a reasonable need for evidence of the other crimes, the test of mutual admissibility is met, subject to the trial court's determination that the probative value of the evidence outweighs any prejudicial effect.[8] *Easton, supra,* 533 A.2d at 906.

In reaching this conclusion, we have considered appellant's claim that dissimilarities between the crimes involved dispel the probability that the offenses were perpetrated by the same individual. The differences between crimes as well as their similarities are appropriate for consideration in determining the admissibility of other crimes evidence under the identity exception. *See Easton, supra,* 533 A.2d at 908–09. Appellant cites in his brief differences among the crimes, including that the robberies took place in an underground garage or apartment house lobby; that one victim described a gold handled knife, while another described a maroon one; that one victim was taken to her apartment and subjected to a sexual assault;[9] and, that the robber asked to see the money in the victim's purse in one robbery, while he took the purse and ran in another. With the exception of the sexual assault, these variances are minor and appear to arise more from adjustments in the perpetrator's methods due to differences in the reactions of the victims and variations in the crime scenes. On the other hand, the points of similarity which the perpetrator controlled (*e.g.,* time, location, clothing, weapon, bicycle, lone female victim entering a secured building, and entry by the assailant into the secured building), or those he could not change (*i.e.,* race, age, height, physique, eyes) are consistent. The combination of these consistent features creates a unique picture which, when weighed against the variations cited, remain strongly convincing of the probability that the perpetrator of the crimes in each instance was the same. *See id.* at 904. It is not necessary for every detail of the crimes to be identical, nor that each share "any single factual characteristic that is compellingly unique." *Cox, supra,* 498 A.2d at 238 (citations omitted). The combination of circumstances of each crime must be compared. *Id.* In

---

**7.** Appellant's palm print left at the Grudzinski apartment links her assailant, who was also on a bike, with the car.

**8.** The trial court made a finding that the probative value of the evidence outweighed any prejudicial effect of the joinder. We find no abuse of

discretion in this regard. *See Bartley, supra,* 530 A.2d at 695 (standard of review on denial of severance is abuse of discretion).

**9.** The sexual offense was severed for trial. *See* n. 2 *ante.*

making that comparison, the reasonable probability that the same man attacked all four of the victims here is inescapable. Therefore, we hold that the trial court did not err in denying severance based on the mutual admissibility of the crimes charged under the identity exception.

## III.

■ Appellant argues that joinder of the CDW count with the remaining charges was improper under Super.Ct.Crim.R. 8(a) thereby requiring reversal. The Rule permits two or more offenses to be joined if of the same or similar character, based upon the same act or transaction, or based on acts connected together or comprising part of a common scheme or plan. Super.Ct.Crim.R. 8(a); *Roper v. United States*, 564 A.2d 726, 729 (D.C.1989). Whether offenses can be joined properly under Rule 8 is a question of law which we review de novo. *Id.* (citations omitted).

■ On appeal, the government relies solely on the portion of the Rule which permits joinder of crimes "connected together." [10] Two crimes are connected together within the meaning of the Rule if "proof of one crime constitutes a substantial portion of proof of the other." *United States v. Montes–Cardenas*, 746 F.2d 771, 776 (11th Cir.1984); [11] *see also Blunt v. United States*, 131 U.S.App.D.C. 306, 311, 404 F.2d 1283, 1288 (1968), *cert. denied*, 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969). We agree that the CDW count was properly joined with the robbery and burglary charges because the acts constituting each offense were "connected together," within the meaning of the Rule by reason of the significant overlapping of proof. In

determining whether two or more acts are properly joined under the "connected together," provision of the Rule, the primary consideration is whether joinder promotes the goal of trial economy and assures "that a [criminal] transaction need only be proved once." *Id.* (quoting *Baker v. United States*, 131 U.S.App.D.C. 7, 20, 401 F.2d 958, 971 (1968)); *Montes–Cardenas*, 746 F.2d at 776. Moreover, "we must construe Rule 8 broadly in favor of initial joinder." *Montes–Cardenas*, 746 F.2d at 776.

Here, proof of the robberies included substantially all of the proof of the CDW charge, as the government argues, thereby satisfying the requirement that the offenses be "connected" under Rule 8(a). The robber displayed a knife to three of the four victims, and he placed a sharp object in the back of the fourth, threatening her that he had a knife. Two of the victims testified that the knife exhibited at trial, which was seized from appellant, could have been the knife that their assailant used during the robberies. Appellant's aunt identified the weapon as one belonging to appellant. Appellant, who otherwise fit the description of the robber and whose palm print was found inside the residence of one of the victims, was arrested with the knife in his possession. The evidence concerning appellant's possession of the knife in the vicinity of the robberies, only twenty-four hours after the last one, was probative of his identity as the robber. *See Hollingsworth v. United States*, 531 A.2d 973, 982 (D.C.1987).

The government's proof that appellant was found in possession of a knife which appeared to be the one used in two of the robberies clearly overlapped with proof re-

---

**10.** The government does not contend that the CDW is of the same or similar character as the remaining offenses. *See Roper, supra,* 564 A.2d at 729–30 (finding armed robbery and CDW dissimilar offenses and therefore, improperly joined under Rule 8(a)). In this case, the trial court ruled that the offenses were joined properly "because they are similar enough, and moreover, part of a common scheme or plan." However, the trial court also recognized that there was a "sufficient connection" between the offenses to allow joinder. Assuming that the trial court did not base its ruling on that part of the

Rule 8(a) upon which the government relies, we can affirm, if appropriate, on grounds other than those relied upon by the trial court. *See Buckner v. United States,* 615 A.2d 1154, 1155 n. 1 (D.C.1992); *see also Word v. Tiber Island Coop Homes, Inc.,* 491 A.2d 521, 523 n. 4 (D.C.1985).

**11.** Super.Ct.Crim.R. 8(a) is identical to Fed. R.Crim.P. 8(a); therefore, federal decisions interpreting the rule provide persuasive authority. *Roper, supra,* 564 A.2d at 729 n. 4 (citations omitted).

quired for the CDW charge. Similarly, the evidence of the robberies would be admissible in a separate trial for the CDW. Appellant was convicted of a violation of D.C.Code § 22–3204 which prohibits, with exceptions not pertinent here, the carrying of a dangerous weapon. Although the government is not required to prove that a defendant so charged specifically intended to use the weapon unlawfully, to establish the charge the government must show that a defendant's purpose in carrying the object was its use as a dangerous weapon. *In re S.P.*, 465 A.2d 823, 826 (D.C.1983) (citations omitted); *Scott v. United States*, 243 A.2d 54, 56 (D.C.1968). Pertinent to consideration of the instrument's dangerousness are the circumstances surrounding its possession and use, its design or construction, physical alteration, defendant's conduct prior to arrest, and the time and place where defendant was found in possession of the instrument. *S.P.*, 465 A.2d at 826. Here, appellant's recent use of the knife as a weapon elucidates appellant's purpose for possessing it. Appellant concedes that the only contested issue on the CDW charge was appellant's purpose in carrying the knife. The evidence of appellant's recent use of the knife as an instrument of offense is probative of this material and contested issue in the CDW count.[12] *See Thompson v. United States*, 546 A.2d 414, 422 (D.C.1988). We consider appellant's prior use of the weapon sufficiently proximate in time to the robberies to elucidate his purpose in carrying it, particularly absent any explanation or legitimate reason for carrying the knife at the location and place where he was arrested. *See S.P., supra*, 465 A.2d at 826.

Appellant argues that this use of the evidence of the robberies is precisely the type of predisposition inference which *Thompson, supra*, precludes. We disagree. In *Thompson*, this court carefully outlined the distinction between the use of prior criminal acts to show intent and its misuse to show predisposition. *See id.* at 421.

> Where evidence of prior crimes can become probative with respect to intent [or purpose] only after an inference of predisposition has been drawn, the argument for admission is at its weakest, for the distinction between intent and predisposition then becomes ephemeral.

*Id.* at 421. Here, the evidence of other crimes was relevant to the CDW charge without the jury having to resort improperly to an inference of predisposition. *See id.* Rather, such evidence explained how appellant most recently used the knife which elucidates his purpose for carrying it. There was no need to resort to an inference that appellant was predisposed to commit another robbery. Had appellant recently used the knife to scale fish, such evidence would have been probative of his purpose in carrying the weapon. So too the use which he most recently made of the knife legitimately sheds light on his purpose in carrying it on the night of his arrest. Other crimes evidence is admissible under such circumstances to prove the contested material issue. *See id.* at 421–22. Therefore, we conclude that the commonality of proof of the CDW and the robberies supports initial joinder under Rule 8(a) as offenses "connected together." *See Grant v. United States*, 402 A.2d 405, 408 (D.C.1979).

### IV.

█ We find no merit to appellant's final argument that the trial court erred in denying his motion to suppress evidence. The arresting officer had sufficient articulable suspicion to warrant appellant's stop under *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). Although the information received by the officer over the radio for a second sighting of a robbery suspect was inaccurate as to the source, the officer also had independent knowledge of the description of the suspect wanted for the robberies. The fact that appellant, who was standing in an alley at 11:00 p.m. in the area of the recent crimes, matched in significant detail the

---

12. *See Roper, supra*, 564 A.2d at 730 n. 6.

assailant's description, provided an adequate basis to justify a *Terry* stop.

The officer found in appellant's pocket, during a protective patdown, a buck knife with a 3½ inch blade which formed the basis of the CDW charge. Appellant argues that his arrest for CDW lacked probable cause because the circumstances did not show that his purpose in carrying the knife was its use as a dangerous weapon unless it were improperly inferred that his involvement in the other robberies revealed his purpose that evening. Even assuming the officer was precluded from factoring such information into his determination of probable cause, we find no error. Standing, as appellant was, in an alley, peering into the windows of an apartment house while carrying a concealed weapon of the type described provides adequate probable cause for the officer to believe that appellant violated the CDW statute. *See S.P., supra,* 465 A.2d at 826 (time and place of possession and absence of conceivable legitimate reason for carrying a weapon pertinent to inquiry of weapon's dangerousness); *see also Scott, supra,* 243 A.2d at 56.

Accordingly, appellant's convictions hereby are

*Affirmed.*